**John R. Barhoum, OSB No. 045150**
Email: john.barhoum@chockbarhoum.com
**Jeffrey W. Hansen, OSB No. 923290**
Email: jeff.hansen@chockbarhoum.com
Chock Barhoum LLP
121 SW Morrison St., Suite 500
Portland, OR  97204
Telephone: 503.223.3000
Facsimile:  503.943.3321
            Attorneys for Defendants City of Saint Helens and
            Adam Raethke

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROBERT BARROR, | Case No.  3:20-cv-00731-SB |
| Plaintiff, | |
| v. | **DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT** |
| CITY OF SAINT HELENS, and ADAM RAETHKE, in his individual capacity, | |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

## LR 7-1(A) CERTIFICATION

Pursuant to L.R. 7.1(a)(1)(A), the undersigned counsel certifies that the parties conferred in good faith prior to filing this motion but were unable to resolve the remaining issues in this Motion.

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

CIS140.0007

## MOTION

Pursuant to 56(c) of the Federal Rules of Civil Procedure, Defendants City of Saint Helens and Officer Adam Raethke (collectively "Defendants") move the Court for summary judgment against Plaintiff's Complaint.

There is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law. This motion is supported by the Declaration of Jeffrey Hansen (hereinafter "Hansen Decl."), the exhibits attached thereto, the Declaration of Sergeant Eustice ("Sgt. Eustice Decl."), the Declaration of Brian Harvey ("Harvey Declaration) and the pleadings and other documents on file.

## SUMMARY OF THE ARGUMENT

Plaintiff Barror brings this unlawful use of force and failure to train claim following injuries sustained during his arrest. However, the facts indisputably show that Barror had led officers on a high-speed chase through a residential neighborhood, failed to pull over, and once stopped, did not comply with any commands given to him by the officers. Additionally, and most importantly, dispatch reported that Barror may have a firearm on him. The combination of Barror's failure to corporate and the uncertainty of a firearm on scene renders Officer Raethke's use of force entirely and objectively reasonable.

This case arises out of an incident involving the arrest of Plaintiff, Robert Barror, on August 6, 2019. Dispatch alerted Columbia County sheriffs to an individual driving erratically and at high speeds. The dispatcher also conveyed the suspect possibly had a firearm. The Troopers contacted the suspect, who continued to drive away at high speeds and failed to pull over. Eventually the vehicle stopped and the suspect, who was Barror, continued to refuse to comply with lawful commands and the troopers called for backup. St. Helens Police Officer Raethke arrived at the

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

scene and, together with the two troopers, approached Barror's vehicle.  A struggle ensued, which consisted of all three officers pulling Barror from the vehicle, wrestling him to the ground, and struggling to handcuff him.  While attempting to place handcuffs on Barror, and while he was continuing to resist arrest, Officer Raethke delivered two knee strikes to Barror, after which Barror stopped struggling and the arrest was completed.

Barror sustained injuries stemming from the arrest.  He how brings excessive force and failure to train claims against Defendants.  However, considering all material facts of the incident, it is apparent that the force Officer Raethke used was reasonable under the circumstances.  Officer Raethke arrived at a scene with knowledge that a suspect was fleeing from officers at a high rate of speed and potentially had a firearm.  He also arrived knowing the suspect had failed to cooperate and listen to any commands from the Troopers.  Upon contacting Barror, Officer Raethke and two other officers had to pull him from the vehicle and wrestle him to the ground.  When Barror continued to struggle as the officers attempted to handcuff him, and not knowing whether he had a weapon on him, Officer Raethke delivered two knee strikes to Barror's side to effectuate the arrest.  The knee strikes were effective, Barror finally stopped struggling, and he was placed under arrest.

It is further apparent that Plaintiff cannot provide any evidence that the training St. Helens officers receive in relation to use of force is inadequate, contrary to the law, deficient or otherwise contributes to a pattern of constitutional violations among its officers.  In other words, Barror presents no evidence that St. Helens' use of force policy demonstrates deliberate indifference such that liability can attach to this incident.  For the reasons explained in greater detail below, summary judgment is appropriate in this case, and Defendants respectfully request dismissal of Plaintiff's claims.

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF LAW

### 1.  Factual Background

This lawsuit arises out of an incident that occurred on August 6, 2019, between the Plaintiff, Robert Barror, Defendant St. Helens, Officer Adam Raethke and Oregon State Troopers.  The basis of Barror's claim is that Officer Raethke used excessive force amounting to an unlawful seizure while attempting to take Barror into custody in violation of the Fourth and Fourteenth Amendment of the US Constitution.  Barror further alleges that the City of Saint Helens has failed to train its officers, amounting to an unlawful seizure in violation of the Fourth Amendment. Barror now brings this lawsuit for $2,100,000 in damages, including $1,050,000 in punitive damages.

On August 6, 2019, at 12:31:15 p.m., Columbia County 9-1-1dispatch was alerted to a traffic complaint of a Grey Chevy Silverado traveling northbound on Highway 30 towards St. Helens, Oregon.  Hansen Decl., ¶ 4, Ex. 3.  The Silverado was reportedly traveling 100 miles per hour and passing other vehicles in the center lane of the highway.  *Id*.  Officer Raethke heard the dispatch on general broadcast and decided to report to the scene and backup the troops.  *Id*. at ¶ 2, Ex 1, 15:15-22.  Troopers Travis Killens and Christopher Cowen were also nearby and decided to respond to the dispatch.  *Id*. at ¶ 3, Ex. 2, 10:20-25, 11:1-4.

At 12:34:41, as Troopers Cowen and Killens reached the intersection of Highway 30 and Millard Road, they witnessed a grey Chevrolet Silverado matching the description from dispatch make a sharp turn out of a turn lane, across five lanes of traffic and continue west onto Millard Road at a high rate of speed.  *Id*. at ¶ 4, Ex. 3; ¶ 5, Ex. 4 (1:20-1:45).  Trooper Cowen and Trooper Killens reported to dispatch that they were in pursuit of the Silverado, the car was passing the center lane and they were traveling 80 miles per hour to catch up to the truck.  *Id*. at ¶ 5, Ex. 4

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

(1:20-2:03). The Silverado continued down Millard Road, eventually turning northbound onto Ross Road and still traveling speeds of up to 60 miles per hour. *Id*. at ¶ 5, Ex. 4 (2:25-2:42). At 12:35:30, Troopers Cowen and Killen witnessed the Silverado drive through a stop sign at the intersection of Ross Road and Bachelor Flat Road. *Id*. at ¶ 5, Ex. 4 (2:55-3:05); *see also* Ex. 3. The Silverado continued to drive down Bachelor Flat Road, ran through another stop sign, and eventually stopped in the middle of the road in front of a home. *Id*. at ¶ 5, Ex. 4 (3:15-3:33). The dispatch records indicate the Silverado was stopped at 12:38:21. Id. at ¶ 4, Ex. 3. During the course of this chase, dispatch conveyed a gun was pulled on another driver. *Id*. Officer Raethke heard through dispatch that the suspect reportedly had a firearm. *Id*. at ¶ 2, Ex. 1, 19:18-22.

Based upon the driver's failure to stop when pursued by officers and the high rate of speed at which he drove, Troopers Cowen and Killens treated the traffic stop as a high risk stop. *Id.* at ¶ 3, Ex. 2, 12:18-25, 13:1-3. They pulled their guns from their holsters, commanded the driver to exit the vehicle with his hands up, and even laid down spike strips to prevent the driver from attempting to drive away. *Id*. at ¶ 5, Ex. 4 (3:35–4:08). When the driver continued to ignore the officers' commands, the Troopers called for additional cover. *Id*.

Approximately a minute and a half after Troopers Killens and Cowen stopped the vehicle, the Dash Cam footage from their vehicle shows Officer Raethke drive past the Silverado and park near the Troopers. *Id*. at ¶ 5, Ex. 4 (5:07-5:26). He arrived at a scene where two troopers were executing a high-risk traffic stop pointing their guns at an uncooperative driver, having previously placed spike strips under his vehicle. *Id*. at ¶2, Ex. 1, 16:13-19. Officer Raethke arrived observing all of these factors, and also with the reports from dispatch that this driver had been driving erratically, failing to obey commands and traffic signals, eluded police, and was possibly armed with a gun. *Id*. at ¶4, Ex. 3. Seconds after he arrived at the scene of the crime, Officer Raethke

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

was falling into formation with the Troopers to approach the Plaintiff in his car. *Id*. at ¶ 5, Ex. 4 (5:26 – 6:00). The Dash Cam footage shows there was virtually no instruction of conversation between Officer Raethke and the Troopers before approaching the vehicle. *Id*.

Trooper Cowen, Trooper Killens and Officer Raethke approached Barror's vehicle and opened the driver's door. *Id*. at ¶ 5, Ex. 4 (6:05 – 6:43). Barror continued to ignore the officers' lawful commands, and a struggle ensued as the officers tried to pull him out of the vehicle. *Id*.; *see also* Ex. 1, 18:11-25, 19:1-5. Eventually the officers wrestled Barror to the ground, but Barror continued to resist arrest. *Id*.; *see also* Ex. 1, 19-6-25, 20:1-8. As a result, Officer Raethke delivered two knee blows to Barror's ribs. *Id*.; *see also* Ex. 1, 20:8-17. At this point, the Officers were able to effectuate the arrest, and Trooper Killen stated, "he's good." *Id*. Raethke delivered no additional knee blows. No gun was recovered at the scene of the incident.

Defendants retained Brian Harvey, an expert witness qualified to evaluate use of force training and former Chief of Police at La Grande Police Department, to review the several deposition testimonies, dash cam footage, police reports and dispatch materials related to this incident. Harvey Decl., ¶¶ 3-4, Ex. 6. Based on his experience and training, Chief Harvey noted that Officer Raethke had information that Barror may have been armed, and if he had in fact been armed could have easily caused extreme injury or even death to any of the officers at the scene. *Id*. at ¶ 4, Ex. 7, p. 2-3. Barror's struggle with the officers, as well as his refusal to show his hand, raised additional concerns, especially once he was on the ground and was not "voluntarily giving up his hands to be handcuffed." *Id*. With one of Barror's hands "out of site and near his midsection or his beltline," which is an area that individuals commonly secure a firearm, Chief Harvey Officer opined that Raethke's concern "was valid and reasonable as was his need to gain immediate control of Mr. Barror's hands," and that the knee strikes "accomplished this goal." *Id*., at Ex. 7, p. 3.

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

Furthermore, Chief Harvey opined that "[t]he force used was consistent with defensive tactics, firearms, and use of force training for police officers in the state of Oregon. *Id*., at Ex. 7, p. 4.

## 2. Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, affidavits, answers to interrogatories, and the admissions on file, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotix Corp. v. Catrett*, 477 US 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and identify facts that show a genuine issue for trial. *Id*. at 324. In evaluating a summary judgment motions: 1) all reasonable doubts as to the existence of a genuine issue of material fact should be resolved against the moving party; and 2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *T.W. Elec. Servs., v. Pac. Elc. Contractors Ass'n.*, 809 F.2d. 626, 630 (9th Cir. 1987).

## 3. Argument

Plaintiff asserts two claims for relief in his Amended Complaint. First, he alleges that all Defendants violated the Fourth Amendment of the US Constitution because Officer Raethke used excessive force, which constituted an unlawful seizure. Second, Plaintiff alleges the arrest that occurred in May 2019 was an unlawful seizure because the City of St. Helens failed to train their officers in the use of force, in violation of the Fourth Amendment. For the reasons explained in greater detail below, there is no issue of material fact related to the arrest at issue in this case and Defendants are entitled to judgment as a matter of law because the force used by Officer Raethke was reasonable under the circumstances.

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

### A. *Excessive Use of Force Claim*

#### 1) *Fourth Amendment Standard for Excessive Use of Force Claims*

When viewing the entirety of the circumstances surrounding the interaction between Officer Raethke and Barror, the facts undisputedly show there is no Fourth Amendment violation in this case because Officer Raethke's actions were reasonable given the facts at Officer Raethke's disposal at the time he entered the scene of the incident and the circumstances leading up to Barror's arrest.  The Fourth Amendment states in its entirety:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

A police officer's use of force constitutes a seizure within the meaning of the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).  Therefore, under the plain language of the Amendment, the seizure must be reasonable.  Whether an officer acted reasonably depends on the totality of the circumstances surrounding the encounter.  *Id*.  When evaluating the use of force in court, the particular use of force must be judged from the perspective of a reasonable officer on scene, rather than with the benefit 20/20 hindsight.  *Id.*  Consequently, any judgment must take into consideration the fact that police officers are often forced to make split-second judgments in tense or unpredictable situations about the amount of force necessary in a particular situation.  *Id.*

The leading US Supreme Court case discussing use of force and excessive force under the Fourth Amendment is *Graham v. Connor*, 490 U.S. 386 (1989).  In that case, police conducted a stop of a diabetic who was having an insulin reaction.  *Id*. at 388.  Eventually, it was determined the plaintiff had not committed any crime, and the officers drove the plaintiff home and released

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

him.  *Id*. at 389.  However, during his encounter with the police, the plaintiff alleged he suffered injuries from the police and sued under 42 U. S. C. 1983 for violations of the Fourth Amendment. *Id*. at 390-91.

The Supreme Court ruled that excessive force claims must be analyzed under the Fourth Amendment's "objective reasonableness" standard.  *Id*. at 392.  Because the test of reasonableness under the Fourth Amendment cannot be precisely defined or applied mechanically, its application requires careful attention to the facts and circumstances of each particular case, including: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest; or (4) whether he is attempting to evade arrest by flight.  *Id*. at 396.

Additionally, the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the "20/20 vision of hindsight." *Id*. at 396.  Consequently, the reasonable analysis must allow for the fact that "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly revolving -- about the amount of force that is necessary in a particular situation."  *Id*. at 397.  The *Graham* court made it exceedingly clear that the "reasonableness" of an officer's actions requires courts to ask whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.  In this case, Officer's Raethke's decision to use knee strikes to finally detain Barror were objectively reasonable because he was responding to a crime scene in which the suspect had eluded officers, driven recklessly, failed to obey any lawful demands, and was resisting arrest while possibly in possession of a deadly weapon.

/ / /

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

2) *Officer Raethke's actions were objectively reasonable where Barror eluded officers, failed to comply with lawful commands and was reportedly armed.*

Taking into consideration the totality of information Officer Raethke had at the time he encountered Barror and what he witnessed as he attempted to arrest Barror, it is clear Officer Raethke's use of force was *not* excessive and did *not* constitute an unlawful seizure. Upon arriving at the scene of the incident, Officer Raethke was aware that Barror had been driving recklessly and at high rates of speed, and that he had failed to pull over when Troopers Cowen and Killens had first encountered his vehicle with their lights and siren blaring. Officer Raethke was also aware that the suspect reportedly had a gun. When he arrived at the scene, he saw Troopers Killens and Cowen with their guns drawn and pointed at Barror's vehicle, and he also understood that until that point Barror had refused to follow any commands given to him by the Troopers. Officer Raethke then attempted to extract Barror from the vehicle with the Troopers and Barror continued to not cooperate and resisted arrest. At the time Officer Raethke made physical contact with Barror, he did not know with certainty if Barror did in fact have a gun on his person but understood Barror was being entirely uncooperative. Taking all of these facts into consideration, Officer Raethke's decision to deliver two knee strikes to secure the suspect and ensure no officers were injured was objectively reasonable. Harvey Decl., ¶ 3, Ex. 7.

The reasonableness of Officer Raethke's actions is even more apparent when compared to other excessive force cases where the court has held that the officer's use of force did not constitute an unlawful seizure. *Johnson v. County of Los Angeles* is one particular example that shares many of the same circumstances as the present case. 340 F.3d 787 (9th Cir. 2003). In *Johnson*, the plaintiff had participated in a robbery that led to a high-speed car chase that lasted an hour. *Id*. at 788-89. The chase came to an end when the robber crashed his car. *Id*. He was then pulled from the vehicle by officers even though the robber repeatedly stated that such efforts were hurting him.

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

*Id*. at 790.  It was later discovered the robber had been rendered paraplegic at some point during the crash and being pulled out of the vehicle.  *Id*.  However, the 9th Circuit held that the district court erred in denying the deputy's motion for summary judgement.  *Id*. at 788.  In analyzing that claim, the Ninth Circuit noted that the deputy was facing an armed suspect who had led police on dangerous car chase.  *Id.* at 792.  At the scene of the crash, the robber was moving his hands all over, causing concern about his possible possession of a weapon.  *Id*.  The deputy applied force to extract a suspect from a getaway.  *Id*.  The force used to remove the plaintiff from the car and take him into custody was "objectively reasonable" because the deputy reasonably could have believed that his conduct was lawful under the circumstances.  *Id*.

Similarly, the Ninth Circuit found there was no use of excessive force in *Miller v. Clark County*, 340 F.3d 959, 960 (9th Cir. 2003).  In *Miller*, a deputy became suspicious of a driver, ran the plates, and discovered the car had false plates.  *Id*. at 960.  When the deputy attempted to stop the vehicle, the driver continued driving, eventually exiting the vehicle and fleeing on foot.  *Id*.  Another deputy eventually found the empty car parked outside of a home (that turned out to be the suspect's home) and saw a knife sitting on the seat.  *Id*.  The deputy released a police dog, who tracked down the suspect, bit his arm and caused severe injuries.  *Id*.  On appeal, the 9th Circuit upheld the District Court's ruling that the use of force was reasonable.  *Id*. at 960.  The suspect was defiant and evasive, the knife indicated a risk of violence and the fact that the suspect hid on a large rural property which could lead to a possible ambush validated the officer deployment of the dog.  *Id*. at 965.  The court concluded there was no excessive force in this case.

In both the *Johnson* and *Miller* cases, the use of force was deemed reasonable where the suspect was eluding officers, causing a high-speed car chase or caused a high-risk situation.  That element is clearly present in this case where Barror was traveling at high speeds and failed to stop

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

when officers began following him with their lights flashing.  Another important factor is whether the suspect is armed or involved in a violent crime.  Again, Officer Raethke was operating under information from his dispatcher that Barror was armed with a gun.  Although that information turned out to be incorrect, that does not make his response unreasonable.  Courts do not get the benefit of hindsight when evaluating whether the use of force was excessive.  This point is reaffirmed in the *Miller* case, where the officers were not entirely sure if the plaintiff was armed but saw a weapon on the seat of the suspect's abandoned car.  Although the suspect in that case also turned out to be unarmed, the officers' suspicion that the suspect could be armed was not unreasonable under the circumstances.  A similar conclusion was reached in *Johnson*, where officers could not see the suspect's hands, causing concern that he might be armed.

The reasonableness of Officer Raethke's actions is even more apparent when compared to cases in which the court found that the force used *was* in fact excessive.  For example, in *Meredith v. Erath*, IRS agents entered a home being investigated for tax-related crimes.  342 F.3d 1057, 1060 (9th Cir. 2003).  Another woman who was not the target of the investigation was in the home, and repeatedly asked to see a warrant.  *Id*.  She was forcefully detained and handcuffed in a manner that caused her pain and bruising.  *Id*.  The defendant law enforcement officers moved for summary judgment, but their motion was denied because the woman did not pose any safety risk and did not attempt to leave the home.  *Id*. at 1061.  Furthermore, the crime being investigated was a tax crime, and although it is considered a serious crime, it is not a violent crime.  *Id*.  Therefore, considering all of the circumstances, the Ninth Circuit held that the need for force was "minimal at best."  *Id*.

Another informative example of a case where the Ninth Circuit ruled in favor of a plaintiff was *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003).  In that case, police responded to a scene in which an individual who had a history of bipolar disorder and

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

schizophrenia and who was having a mental health crisis was darting out into traffic. *Id*. at 1054. He was unarmed, but the officers decided to take him into custody to protect him until medics could arrive. *Id*. Officers knocked him down and two officers put their knees into the individual's back, which ultimately caused the plaintiff to fall into respiratory distress and lose consciousness. *Id*. at 1054-55. He suffered permanent brain damage. *Id*. at 1055. On appeal, the 9th Circuit held that the district court's granting of summary judgment was improper. *Id*. at 1055-56. The court noted that while some degree of physical restraint may have been necessary to prevent the subject from injuring himself, it was clear to a reasonable officer that the force alleged was constitutionally excessive. *Id*. at 1057. There was no justification for the degree of force used because there was no underlying crime and once the plaintiff was knocked to the ground and handcuffed, he posed only a minimal threat to the officers' safety. *Id*. There was further no evidence that the plaintiff was resisting. *Id*. For these reasons, there was a material issue of fact precluding summary judgment in that case.

When comparing the present case to instances where the court found summary judgment should not be granted, there are notable differences in the facts giving rise to the alleged constitutional violation. *Drummond* and *Meredith* both show an officer used excessive force when he or she used force against a suspect who did not resist or there was no tie to a violent crime. However, these circumstances are not present here. From the moment the Troopers contacted Barror he did not comply with their commands. He failed to pull over and eluded the officers despite having their lights and sirens on. The depositions of all of the officers present all indicate Barror refused to comply with commands once his vehicle was stopped. Even once Barror was removed from his vehicle he struggled with the officers and resisted arrest and, importantly, there was the possibility that Barror was armed. All of these facts make the present case distinguishable

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

from cases like *Drummond* and *Meredith* where the suspects in those cases were not resisting arrest and did not pose a threat of violence or danger to either the officers involved or the general public.

The Fourth Amendment is not violated where the officer demonstrates behavior that is objectively reasonable in the given circumstances.  In this case, Officer Raethke arrived at the scene of the incident with information that Barror had eluded police at high speeds, was not responding to commands and possibly had a gun.  When he saw Troopers with their guns drawn and with tire strips laid down, his original understanding was undoubtedly confirmed.  Once the door to Barror's vehicle was opened, Barror continued to resist arrest and it took all three officers to pull him from the vehicle and get him on the ground.  Once on the ground, Barror still struggled, and not knowing if he was armed, Officer Raethke delivered knee strikes so the arrest could be completed without risking injury to either himself or the Troopers.  This use of force is objectively reasonable and consistent with other court rulings that concluded that the Fourth Amendment had not been violated.  For these reasons, summary judgment is appropriate in this matter.

### B. *Failure to Train Claim*

#### 1) *Failure to Train Standard*

If this court should find that Plaintiff's excessive force claim survives summary judgment, his failure to train claim should still be dismissed as there is no evidence that the City of St. Helens was deliberately indifferent about training its officers on the appropriate level of force to use during encounters with the public.  The first case to consider whether a municipality could be held liable for failing to train their employees was *City of Canton, Ohio v. Harris*, 489 U.S. 378109 S.Ct. 1197 (1989).  In that case, a woman was arrested, showed signs of needing medical attention, but the officers at the booking station did not call for medical aid.  *Id*. at 381.  Evidence showed that while shift commanders were authorized to determine whether a detainee required medical care,

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

they were not provided with any specific or special training to decide when to summon medical care for detainees showing signs of injury or ailments. *Id*. at 382. Ultimately, the Supreme Court held that a municipality may be liable under § 1983 for failing to train its police officers, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id*. at 388. The Court went on to explain:

> "This rule is most consistent with our admonition in *Monell*, and *Polk County v. Dodson*, that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. As Justice BRENNAN's opinion in *Pembaur v. Cincinnati* put it: "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id*. at 389 (internal citations omitted).

Although the *Canton* court confirmed a municipality may be liable for demonstrating a deliberate indifference to ensuring it enacts polices designed to prevent constitutional violations, it went on to explain that the issue in failure to train cases is whether the training or policy is adequate and, if not, whether the lack of training essentially equates to a 'city policy' of not taking reasonable steps to train its employees or officers. *Id*. at 390. Put differently, liability attaches where it is apparent that the need for alternative or additional training is "so obvious," and the lack of or inadequacy of that training is "so likely" to lead to constitutional violations, that the municipality's policymakers "can reasonably be said to have been deliberately indifferent to the need" for better training. *Id*. Therefore, it is not enough to merely demonstrate that an officer or employee has been unsatisfactorily trained, as the officer's or employee's actions may have been

the product of other factors such as the negligent application of the policy. *Id*. at 390-91. It is also not enough to merely allege that more training could have prevented the injury, as one could make that argument in any incident causing injury, and even properly trained individuals can make mistakes. *Id*. at 391. Finally, for liability to be established, a plaintiff must establish that "the deficiency in training actually caused the police officers' indifference" to the constitutional rights of the injured individual. *Id*.

In *Board of County Commissioners v. Brown*, 520 U.S. 397, 117 S.Ct. 1382 (1997), the Supreme Court identified the circumstances under which a municipality can be liable for inadequate training of its employees. The first circumstance is a deficient training program, "intended to apply over time to multiple employees." *Id*. at 407. The continued adherence by policymakers "to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id*. Further, "the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Id*. at 407–08.

The *Brown* Court also stated that a plaintiff might succeed in proving a failure-to-train claim without showing a pattern of constitutional violations where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id*. at 409. The Court explained:

> "The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right." *Id.*

In this case, Plaintiff has failed to present evidence of either of these two circumstances. Plaintiff does not present any evidence of a pattern of excessive force or Fourth Amendment violations by any St. Helens officers, let along Officer Raethke. Likewise, there is no evidence that the City make a conscious decision not to train its officers in a manner that showed "deliberate indifference" to the obvious likelihood of a constitutional violation. As a result, summary judgment is appropriate, and Defendants respectfully request Plaintiff's failure to train claim be dismissed.

2) *If Plaintiff's excessive force claim fails under summary judgment, then his failure to train claim cannot logically prevail because there is no evidence of a deviation from the training Officer Raethke underwent.*

If this court finds that Defendants prevail on summary judgment against Barror's excessive use of force claim, his failure to train claim cannot proceed because there would be no basis for Plaintiff to claim that Officer's Raethke's actions deviated from his training. Plaintiff's complaint asserts that "Defendant City of St. Helens fails to properly train their police officers in the use of force" when confronting members of the public or individuals like Plaintiff. Am. Compl. ¶ 14. However, basic logic would lead one to conclude that if Officer Raethke's use of force did not exceed the reasonableness standard established by the Fourth Amendment, then the city could not have failed to properly train him to handle such encounters like the one he experienced with Barror. Put differently, if this court finds there was no unlawful seizure under the Fourth Amendment – or no deprivation of constitutional rights –there is no causal connection between the relevant policy and the alleged constitutional deprivation because there is no deprivation of rights in the first place. Therefore, if this court dismisses Barror's excessive force claim on Defendants' summary judgment motion, his failure to train claim must similarly be dismissed.

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

3) *A failure to train claim cannot prevail where a plaintiff cannot point to any evidence that a municipality has been deliberately indifferent in protecting the constitutional right of an individual.*

Alternatively, if this court deems Barror's excessive force case survives summary judgment, summary judgment is still appropriate against Barror's failure to train claim because there is no evidence that the policies in place were failing the public in protecting them from excessive force, nor that the City acted with any deliberate indifference to fail to provide training that would likely deprive citizens like Barror from unlawful seizure.  At the time of this incident, the City of St. Helens had a use of force policy in place.  This policy is ever changing to reflect the changes in the law and is the culmination of several individual and entities working together to define an appropriate policy.  Sgt. Eustice Decl. at ¶¶ 5-6.  The policy provides guidelines on how officers can execute reasonable force when responding to various situations while simultaneous protecting the public welfare.  Importantly, the policy identifies when an officer is entitled to use force in an interaction with an individual.  The policy states:

> "Officers shall use only that amount of force that reasonably appears necessary given the facts and circumstances perceived by the officer at the time of the event to accomplish a legitimate law enforcement purpose.
>
> The reasonableness of force will be judged from the perspective of a reasonable officer on the scene at the time of the incident. Any evaluation of reasonableness must allow for the fact that officers are often forced to make split second decisions about the amount of force that reasonably appears necessary in a particular situation, with limited information and circumstances that are tense, uncertain, and rapidly evolving.
>
> Given that no policy can realistically predict every possible situation an officer might encounter, Officers are entrusted to use well-reasoned discretion in determining the appropriate use of force in each incident." *Id.* at ¶ 7, Ex. 5, p. 36-37.

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

The St. Helens' use of force policy also outlines in section 300.3.1 when an officer may use force to effect an arrest. That section states in its entirety:

> "An officer is justified in using force upon another person only when and to the extent that the officer reasonably believes it necessary (ORS 161.235)"
>
> > (a)    To make an arrest or to prevent the escape from custody of an arrested person unless the officer knows that the arrest is unlawful; or
> >
> > (b)    for self-defense or to defend a third person from what the officer reasonably believes to be the use of imminent use of force while making or attempting to make an arrest or while preventing or attempting to prevent an escape." *Id*. at ¶ 2, Ex. 5, p. 37.

Finally, Section 300.3.2 identifies factors that an officer should take into consideration (should time and circumstances permit) to determine whether to apply force. Those factors include the conduct of the individual being confronted, the proximity of weapons, the degree to which the subject has been effectively restrained, potential for injury to officers, whether the person appears to be resisting or attempted to evade arrest by flight, and any other exigent circumstances. *Id*. at ¶ 2, Ex. 5, p. 37-38.

It is undisputed that St. Helens has a policy to help train officers on how and when to use force during an encounter with an individual. Consequently, liability can only attach in this case if Plaintiff demonstrates either that this policy is so inadequate that the City knew or should have known that it was failing to prevent constitutional violation, or where the City demonstrated deliberate indifference in developing a policy such that it is obvious that a constitutional violation will likely occur. *See Brown*, 520 U.S. at 407-09. Addressing the first circumstance, there is no evidence that the use of force policy is so inadequate that the City knew or should have known that it was failing to prevent Fourth Amendment violations. As an initial matter, Plaintiff has not

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

presented any evidence that the policy in and of itself if "inadequate" or in need of revision. The policy does not blatantly contradict either Oregon or federal laws and instructs officers to use reasonable force when effectuating arrests, which is consistent with the exact language of the *Graham* opinion. *See Graham*, 490 U.S. at 392. During his deposition, Officer Raethke confirmed he had been trained on these policies and indicated that he regularly underwent additional mandated trainings to reeducate himself on the use of force. Furthermore, Plaintiff has not offered any expert testimony or report that would suggest that there is an issue of material fact that the use of force policy is inadequate, defective, or otherwise lacking direction that would allow officers to handle these situations. In that same vein, there is nothing on the record to indicate there was some pattern of constitutional violations that would allow one to conclude the City had notice of and repeated constitutional violations or problematic behavior, let alone the inadequacies of their policy.

There is also no evidence that the City outright failed to train Officer Raethke – or any of its officers – on the adequate use of force. In fact, the evidence overwhelmingly points to the contrary. Officer Raethke testified that he undergoes annual use of force training and is current on all of his trainings. Hansen Decl. ¶ 2, Ex., 9:15-25, 10:1. St Helens Officers are required to go through in-person trainings as well as review training videos. *Id*. at Ex. 1, 10:4-12; *See also* Sgt. Eustice Decl., ¶ 4. The Officer also adequately recalled that his use of force policy and training instructs him to use force to defend himself, defend others or to make an arrest. *Id.* at Ex. 1, 10:16-20. Clearly, the City takes an active role in ensuring its officers continue to engage in regular trainings demonstrating it understanding that a failure to require its officers to undergo such training could result in a constitutional violation. Put differently, there is no room to argue that the City is deliberately indifferent to a person's right to be free from unlawful seizure because (1)

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

is has a policy specifically dedicated to the use of force and the circumstances where it may be reasonable to engage in forceful measures to effectuate an arrest, (2) the policy is regularly modified or adapted to reflect the current state of the law, and (3) it requires its officers to participate in trainings that educate officers on these policies.

These arguments are affirmed further when reviewing the case law in failure to train cases. For example, in *Johnson v. Hawe*, an arrestee filed suit under § 1983 alleging that his Fourth Amendment rights had been violated by the officers who arrested and incarcerated him.  388 F.3d 676 (9th Cir.2004), *cert. denied*, 544 U.S. 1048, 125 S.Ct. 2294 (2005).  In support of his municipal liability claim, he submitted a declaration from a law enforcement expert, who offered opinions that the departments "self-training" programs amounted to a failure to train its staff.  *Id*. at 686. On appeal, the Ninth Circuit found that while the plaintiff in that case had no evidence of the existence of any policy that the officers followed during the plaintiff's arrest, the expert's declaration created "at least a genuine issue as to whether 'self-training' in this context amounted to deliberate indifference." *Id*.  As noted above, Plaintiff here has not offered any expert opinion or analysis that ultimately concludes the use of force policy or the annual training that Officer Raethke undergoes is either inadequate or constitutes a deliberate indifference.

Similarly in *Long v. County of Los Angeles,* the Ninth Circuit was tasked with determining whether there was a triable issue of fact relating to whether the County's policy of relying on medical professionals without additional training on how to properly monitor and assess medically unstable patients rose to the level of deliberate indifference.  442 F.3d 1178, 1188-89, 06 Cal. Daily Op. Serv. 2574 (9th Cir. 2006).  The county provided testimony from doctors and nurses who referred to the injured patient's medical records to show he had been cared for.  *Id*.  However, the plaintiff offered declarations of two experts who, based on their review of the patient's records,

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

concluded the nurses had not been adequately trained on the monitoring of patients and that failure led to delays in the patient's care.  *Id*.  The Ninth Circuit found that the two declarations of plaintiff's two experts created a triable issue of material fact that the training the nurses received was not adequate.  Here, however, Barror cannot point to any evidence that suggests the training the St. Helens' officers or Officer Raethke received was inadequate.

To the extent Barror asserts Officer Raethke himself was improperly trained, that too is insufficient to attach liability to a municipality for failure to train its officers or employees.  *See e.g. Blankenhorn v. City of Orange*, 485 F.3d 463, 484-85, 07 Cal. Daily Op. Serv. 5027 (9th Cir. 2007) (stating "evidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy," and further explaining, "absent evidence of a program-wide inadequacy in training, any shortfall in a single officer's training can only be classified as negligence on the part of the municipal defendant—a much lower standard of fault than deliberate indifference.") (internal quotations and citations omitted); *See also Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994) (plaintiff could not attach liability to municipality where she only argued that the training of one individual was inadequate and produced "no evidence showing that the alleged inadequacy of his training was the result of a "deliberate" or "conscious" choice, which, under Canton, is necessary to establish a municipal policy.").

In this case, Barror alleges the City of St. Helens does not properly train their police officers in the use of force.  Nevertheless, Barror has failed to produce any evidence that suggests the use of force policy and training the officers undergo is insufficient, inadequate, contrary to the law, or otherwise improper so that it is obviously likely that the constitutional rights of an individual will be violated.  Barror has not proffered any expert opinions, established a pattern of constitutional

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT

violations among the department or established that a material question of fact exists that would allow a reasonable jury to conclude that the City is deliberately indifferent to training its officers to use the appropriate amount of force when attempting to make an arrest.  For these reasons, summary judgment is appropriate, and Defendants respectfully request that Plaintiff's failure to train claim be dismissed.

## CONCLUSION

Summary judgment is appropriate where there is no issue of material fact that should be left to a finder of fact to decide.  In this case, when taking into consideration the entirety of the facts and information that Officer Raethke had while attempting to arrest Barror, his decision to deliver the knee strikes was objectively reasonable and did not amount to a constitutional violation. At the same time, Barror has provided absolutely no evidence that the City has been deliberately indifferent in training its officers or in developing its use of force policies because there is no evidence that suggests the policy is inadequate or creates a pattern of violating the rights of others. For these reasons, summary judgment is appropriate in this case, and Defendants request the Court grant this motion and dismiss Plaintiff's claims.

RESPECTFULLY SUBMITTED this 22nd day of November, 2022.

**CHOCK BARHOUM LLP**

John R. Barhoum, OSB No. 045150
Email: john.barhoum@chockbarhoum.com
Jeffrey W. Hansen, OSB No. 923290
Email: jeff.hansen@chockbarhoum.com
Attorneys for Defendants City of Saint Helens and Adam Raethke

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S MOTION FOR SUMMARY JUDGMENT