# Expert Report and Opinions

RE: Barror v. City of Saint Helens & Raethke

My name is Brian Harvey and I have been retained by Mr. Jeff Hansen to review the material provided in this matter and offer objective opinions within my area of police practice and expertise concerning the decisions made by Officer Adam Raethke during his interaction with Mr. Robert Barror on August 6, 2019.

I reached the conclusions by reviewing the material provided and drawing upon the knowledge, training, research and experience gathered during my 36 years of full time sworn police career. My rule 26 (B) disclosures are listed on attachment B. The material reviewed is listed on Attachment A. My educational background, training, operational experience and qualifications are listed on Attachment C. Upon this review and consideration I offer the following opinion in reference to this incident.

I reserve the right to change or modify my opinion based on new or additional information that is presented to me.

## Incident Summary

### Opinion
I offer the following opinion related to my area of police practice and expertise. My opinions are offered to a reasonable degree of professional certainty and based on the materials reviewed, information considered, and conclusions drawn from the case material and totality of my knowledge, training and experience.

### Opinion 1
It is my opinion and belief that the force used by Officer Adam Raethke was consistent with contemporary police training, standards and practices for a reasonable, prudent and properly trained officer facing similar circumstances.

### Incident Summary
On August 6, 2019 at about 12:30 PM, Saint Helens Police Department Officer Adam Raethke heard a general CCOM dispatch of a driver traveling 100 MPH on Highway 30 near mile post 24 in a Chevrolet Silverado pickup. Officer Raethke heard Oregon State Police troopers advise they were in pursuit of the Silverado which was failing to yield. "CCOM advised the male driving the suspect vehicle was reported to have been armed with a handgun. CCOM further advised the male reportedly aimed the firearm at a woman in the area".[1]

Officer Raethke responded in the direction of the pursuit and arrived at the intersection of Bachelor Flat Road and Summit View Drive where he observed the Troopers had the

---

[1] Officer Raethke's police report dated 08/08/2019, 911 Audio, 911 CAD Reports 12:38:09

1

Exhibit 7
Page 1 of 5

Silverado stopped and were pointing their handguns toward the suspect vehicle. Trooper Killens was giving commands however Robert Barror, the driver, "at this point was not complying with any of my lawful commands" and "appeared very frantic and upset"[2]

Saint Helens Police Department Officer Gaston arrived simultaneously with Officer Raethke. Trooper Killens advised them that another vehicle driver on the scene might have a gun. Officer Raethke started to assist the troopers and the three of them ultimately approached the driver's door of the Silverado while keeping Barror at gunpoint. Barror continued to refuse to get out of the Silverado and the Troopers and Officer Raethke had to physically pull Barror out of the vehicle and to the ground when he refused to exit the vehicle and physically attempted to pull away. Barror physically resisted efforts to control his arms and be handcuffed. During this struggle Officer Raethke delivered two knee strikes to Barror and the Troopers were then able to handcuff him.[3]

**Considerations and basis for opinion**
Officer Raethke had information that Robert Barror (later identified) was driving in a reckless manner, was reported to be armed with a handgun and pointed it at a woman in the area, then eluded the Troopers who tried to stop his vehicle. Furthermore he failed to comply with commands of the Troopers during a high risk traffic stop. These factors would put a reasonable police officer on notice that they were dealing with a rapidly evolving situation with seriously elevated risk to the responding officers and the community.

When the Troopers and Officer Raethke approached Mr. Barror in his vehicle he still refused to exit the vehicle or comply with lawful commands. At this point Officer Raethke and the Troopers would have no way of knowing if Mr. Barror was currently armed or still have access to a firearm as described by dispatch. When they took ahold of him to pull him from the vehicle Officer Raethke observed him leaning away from the driver's side and toward the passenger side while his hand was not controlled. Officer Raethke was growing increasingly concerned he may be reaching for something.

When they were pulling Mr. Barror from his vehicle it was clear that Mr. Barror was resisting and attempting to pull away from Officer Raethke and the Troopers and his body was moving back toward the open doorway of the Silverado. It is clear in the dash cam video that despite Mr. Barror's stature and there being two officers taking hold of him, he still resisted to the point that it took substantial effort to pull him away from the truck and to the ground.

Once on the ground Officer Raethke still had not determined if Mr. Barror was armed or not and he had at least one hand out of sight and near his "midsection or his beltline"

---

[2] Trooper Killens police report dated 08/06/2019 page 3

[3] Trooper Cowen's and Killen's and Office Raethke's police reports

area which is a common place to secure a firearm. Officer Raethke was "growingly concerned because we have this report of a firearm. CCOM had advised me that Mr. Barror possibly aimed a firearm at a female in the area"[4] Mr. Barror was not voluntarily giving up his hands to be handcuffed and according to Trooper Cowen Barror "was actively pulling his hands away from my attempt, to avoid me placing him in handcuffs."[5]

Officer Raethke delivered two knee strikes to Mr. Barror and Mr. Barror stopped resisting. Officer Raethke delivered no other strikes after Mr. Barror stopped resisting. In deposition Trooper Cowen agreed that Mr. Barror's active resistance did not stop until after Officer Raethke delivered knee strikes to Mr. Barror.[6]

Although there were two Troopers and Officer Raethke all attempting to control Mr. Barror whom was a lone suspect, Officers have been killed in the United States and the state of Oregon by suspects with undetected firearms and other weapons they were carrying on their person that were retrieved by the suspect during a close up encounter. Had Mr. Raethke been armed as reported, he could have potentially shot all three officers and killed one or more of them. It would be impossible for Officer Raethke or the Troopers to determine Mr. Barror was not armed at this point as they had not secured him and performed a comprehensive search of his person yet.

Officer Raethke's concern was valid and reasonable as was his need to gain immediate control of Mr. Barror's hands. He delivered two knee strikes which accomplished this goal and the Troopers were able to successfully handcuff Mr. Barror.

In reviewing the materials provided for this case it is notable that Troopers Cowen and Killens did not utilize any focused blows while attempting to overcome Mr. Barrors' obvious physical resistance to being taken into lawful custody however Officer Raethke did. Officer Raethke clearly noted in his report that CCOM dispatch had advised him that the male driving the suspect vehicle was reported to be armed with a handgun and reportedly aimed the firearm at a woman in the area. In reviewing the dispatch 911 audio recording dispatch is heard advising "possible weapons involved, female saying a gun was pulled on her". [7]

Despite this dispatched information, nowhere in either Trooper Cowen or Trooper Killens reports is there any mention of this nor do they mention it in their depositions. This would lead me to believe that somehow they missed this information or it was not provided to them. This presents a situation where responding law enforcement officers are likely operating off of two separate use of force decision making parameters. The fact that someone may be armed with a gun and menaced someone with it is an

---

[4] Officer Raethke deposition page 19

[5] Trooper Cowen's police report dated 08/06/2019 page 6

[6] Trooper Cowen deposition page 38

[7] 911 Audio, 911 CAD reports 12:38:09

absolutely critical factor when assessing the facts and circumstances for a force delivery decision. This information coupled with Mr. Barror's complete lack of cooperation, lack of following any lawful commands and active physical resistance to being taken into custody would provide reason for any well trained professional police officer to elevate their force delivery to achieve a secured custody immediately, to prevent the possible access and potential use of weapons.

## Conclusion

In consideration of the information provided above, it is my overall opinion and belief that the force used by Officer Adam Raethke in this incident was the result of his reasonable assessment of the totality of circumstances presented during a tense, uncertain and rapidly evolving situation. The force used was consistent with defensive tactics, firearms and use of force training for police officers in the state of Oregon. Furthermore the force was delivered in direct response to the threatening and unpredictable circumstances Mr. Robert Barror had created by his refusal to comply with lawful orders, his active physical resistance and failure to submit to a lawful arrest.

_____   10/28/2022
Signature                    Date

**Attachment A**

**Material reviewed:**

1. Deposition Transcript of Adam Raethke
2. Deposition Transcript of Christopher Cowen
3. Deposition Transcript of Travis Killens
4. Deposition Transcript of Plaintiff Robert Barror
5. Oregon State Police Reports
6. St. Helens Police Report
7. 911 Audio
8. 911 CAD Reports
9. Dash Cam Footage
10. Body Camera Footage
11. Complaint
12. Answer
13. Interrogatories and Response