Justin Steffen
*Attorney for Plaintiff*
Steffen Legal Services, LLC
2100 SE Lake Rd. #5
Milwaukie, OR 97222
971-570-9225
info@steffenlegal.com

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **ROBERT BARROR**, | **Case No.: 3:20-cv-00731-SB** |
| Plaintiff, | **RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **CITY OF ST. HELENS and ADAM RAETHKE, in his individual capacity.** | |
| Defendants. | |

Plaintiff responds to Defendants' Motion for Summary Judgment as follows:

**LEGAL STANDARD**

Plaintiff agrees with the standard cited by Defendants from the *Graham v. Connor* opinion: "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). As luck would have it, we have the perspective of ***two***

Page 1 – **RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

reasonable officers who were actually on the scene on 8/6/2019 (see below).

In addition, whether the use of force was reasonable or not is almost always a question of

fact for the jury to decide:

- "Because [the excessive force inquiry] nearly always requires a jury to sift through

  disputed factual contentions, and to draw inferences therefrom, we have held on many

  occasions that summary judgment or judgment as a matter of law in excessive force cases

  should be granted sparingly. We have held repeatedly that the reasonableness of force

  used is ordinarily a question of fact for the jury. This is because such cases almost always

  turn on a jury's credibility determinations [internal quotations omitted]." *Smith v. City of*

  *Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).

- "The question is not simply whether the force was necessary to accomplish a legitimate

  police objective; it is whether the force used was reasonable in light of all the relevant

  circumstances." *Id*.

- "Because the test of reasonableness under the Fourth Amendment is not capable of

  precise definition or mechanical application, the reasonableness of a seizure must instead

  be assessed by carefully considering the objective facts and circumstances that

  confronted the arresting officers. In some cases, for example, the availability of

  alternative methods of capturing or subduing a suspect may be a factor to consider." *Id*.

In addition, the fact that Mr. Barror was restrained and no longer resisting is a strong

indicator that the force used was excessive.

> "We have never required that a suspect's every inch be immobilized before he is
> considered restrained for a reasonable force analysis. To the contrary, our cases
> routinely call suspects 'restrained' after they have been handcuffed, e.g.,
> *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir.
> 2003), or simply pinned down by officers, e.g., *Tuuamalemalo v. Greene*, 946
> F.3d 471, 477 (9th Cir. 2019).2 We thus conclude that, viewing the complaint in

Page 2 – **RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

the light most favorable to Hyde, Pralgo and Callahan-English used excessive force after Hyde was restrained and apparently no longer resisting. *Hyde v. City of Willcox*, 23 F.4th 863 (9th Cir. 2022).

There is no reason to deviate from these standards in the present case. When viewing all the facts in the light most favorable to Plaintiff, it is clear there are genuine factual issues that should be decided by a jury, making Defendants' motion for summary judgment improper.

**ARGUMENT**

**The Testimony of Oregon State Troopers Precludes Summary Judgment**

Troopers Cowen and Killens have testified as to the amount of force that was necessary to take Mr. Barror into custody and they have both testified that the force used by Officer Raethke was excessive. Bizarrely, Defendants argue that the perspective of their paid expert who was not on the scene should be substituted for the State Troopers who were actually present. Not only do Defendants think their expert's paid opinion is relevant, they argue that his opinion should be trusted so much, that the opinions of state troopers actually on the scene are so irrelevant that a jury could not possibly find their testimony credible.

Specifically, Trooper Killens stated the following under oath:

- Mr. Barror was uncooperative, but not in a dangerous way. *Declaration of Justin Steffen*, Exhibit 1, page 2.

- Trooper Killens and Cowen were assisting Mr. Barror with unbuckling his seatbelt when Officer Raethke "shove[d] past" Trooper Killens, pushing him out of the way. *Id*. at pages 2-3 and page 12.

- Officer Raethke was, "screaming and cursing. 'Get out of the f-ing car.'" *Id*. at page 3.

- Trooper Killens put his taser away to help Mr. Barror to the ground. *Id*.

Page 3 – **RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

- Trooper Killens deployed the "open-hand" custody technique on Mr. Barror, which is the lower end of the use of force spectrum and all that was necessary to arrest Mr. Barror. *Id.* at pages 3 and 8.

- While he was attempting to use this technique, Trooper Killens had to physically and verbally stop Officer Raethke from striking Mr. Barror with his knee. *Id* at pages 3 and 7.

- Trooper Killens felt that the open-hand technique was all the force needed to effectuate the arrest of Mr. Barror. *Id.* at pages 4-5.

- Trooper Killens has received training on how to arrest physically disabled individuals. *Id.* at page 6.

- Trooper Killens reported Officer Raethke's use of force to his superior officer, Sergeant Schwartz. *Id.* at page 9.

- Trooper Killens was unsure as to which vehicle possibly contained a firearm. *Id.* at page 10.

- Mr. Barror was ***not*** actively resisting his removal from his vehicle. *Id.* at page 11.


Likewise, Trooper Cowen offered the following testimony under oath:

- There was information that a person in the vehicle following Mr. Barror's had a gun (more on this below).  *Declaration of Justin Steffen, Exhibit 2.* at page 2.

- Mr. Barror informed the troopers and Officer Raethke that he could not keep his hands up. *Id.* at pages 2-3.

- Mr. Barror's hands were visible, "the entire time" and Trooper Cowen was able to see that Mr. Barror did not have a firearm in his hands before he was pulled out of his vehicle. *Id.* at pages 3 and pages 6-7.

Page 4 – **RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

- Mr. Barror was not, "actively fighting" the troopers and Officer Raethke. *Id.* at page 3.

- Trooper Cowen had to verbally order Officer Raethke to stop striking Mr. Barror with his knee and felt that no further force was necessary to arrest Mr. Barror. *Id.* at pages 3-4.

- Officer Raethke sounded angry to Trooper Cowen. *Id.* at page 4.

- The 'open hand technique' was the proper amount of force necessary to arrest Mr. Barror. *Id.* at pages 5-6.

- Trooper Cowen felt Officer Raethke's use of force needed to be reported to his superior officer because it was not the level of force Trooper Cowen would have used and that Officer Raethke struck Mr. Barror with his knee three times. *Id.* at pages 8-9.


**Officer Raethke's Testimony Also Precludes Summary Judgment**

When viewed in the light most favorable to Plaintiff, Officer Raethke's own testimony regarding the events is simply not credible. Furthermore, many of Officer Raethke's statements support Plaintiff's position:

- Officer Raethke is unaware of any use of force training by the City of St. Helens that relates to detaining individuals with physical disabilities. *Declaration of Justin Steffen, Exhibit 3*, pages 2-3.

- Officer Raethke put his firearm away before using force on Mr. Barror. *Id*. at page 4. If Officer Raethke was so concerned about Mr. Barror having a firearm, as claimed in Defendants' motion, it is nonsensical for him to holster his own firearm. In other words, Mr. Barror was clearly not such an extreme danger to Officer Raethke or the state troopers, as Defendants claim.

- Officer Raethke testified that he did not hear Mr. Barror say he could not raise his hands,

Page 5 – **RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

despite this being clearly audible in the video footage. *Id* at pages 6 and 23-24 (also, see Defendants' Exhibit 4).

- Officer Raethke testified that he did not hear the state troopers telling him to stop striking Mr. Barror, despite this being clearly audible in the video footage. *Id* at pages 7-8 and 25 (also, see Defendants' Exhibit 4).

- Officer Raethke was wearing a body camera that recorded video footage of the incident, which he reviewed with his superior officer. *Id*. at pages 9-10 and 14. That footage has mysteriously disappeared. *Declaration of Justin Steffen, Exhibit 4.*

- Officer Raethke received no training related to verbal conflict and control with the City of St. Helens prior to August 6th, 2019 (the date of Mr. Barror's arrest). *Declaration of Justin Steffen, Exhibit 3,* page 16.

- Sergeant Eustice of the City of St. Helens Police department has, "identified several areas where further training is needed" for recruit and lateral officers. *Id*. at page 16.

- Sergeant Eustice noticed that Officer Raethke's tone and body language, "seemed amplified beyond that of the other officers on scene" during Mr. Barror's arrest. *Id.* at page 19.

- Sergeant Eustice and Officer Raethke both agreed that the footage of Officer Raethke, "did not look good." *Id*. at page 20.

- De-escalation techniques were not part of the training or policy for the City of St. Helens Police Department at the time of Mr. Barror's arrest. *Id*. at page 26-27.

**Case Law Cited by Defendants Does Not Support Their Motion**

Defendants attempt to support their position by citing various cases. However, these cases

Page 6 – **RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

are either factually distinct from the present case or actually support Plaintiff's position that excessive force was used.

***Johnson v. County of Los Angeles*, 340 F.3d 787 (9th Cir. 2003):**

    This case is distinguishable for several reasons:

- It was decided on the basis of qualified immunity, which is not at issue in the present case. "We are asked to decide whether Deputy Woodard is entitled to summary judgment on the basis of qualified immunity. *Johnson* at 791. Defendants' motion for summary judgment does not make a claim based on qualified immunity.

- The suspects in *Johnson* were known to be armed bank robbers; not someone who *might* have a firearm. *Id.* at 790.

- The injuries claimed by Plaintiff Johnson allegedly occurred when he was pulled out of the car, dropped to the ground, and his back was struck by a knee. *Id*. However, it was clear from the record that, "if a knee was in fact placed on his back, it was not done with any significant degree of force." *Id*. In fact, Johnson did not even allege, "anything more violent than hard pulling and twisting. *Id*. at 793. In the present case, there is no question that the knee strikes by Officer Raethke were used to stop Mr. Barror's alleged resistance. Officer Raethke was not placing his knee on Mr. Barror without force.

- In his appeal, Johnson did not even challenge the District Court's finding that no excessive force was used. He only challenged the finding that Deputy Woodard was entitled to qualified immunity. *Id.* at 790-791.

***Miller v. Clark County*, 340 F.3d 959 (9th Cir. 2003):**

    This case is also distinguishable:

- This case involves whether or not sending a police dog after a fleeing suspect is a

reasonable use of force when the suspect was known to definitely have been armed with a knife prior to fleeing his vehicle. These facts are not the least bit relevant to the present case. Mr. Barror was not fleeing at the time excessive force was used and there was no evidence that he was actually armed. Also, no police dog was sent after Mr. Barror.

***Meredith v. Erath*, 342 F.3d 1057 (9th Cir. 2003):**

This case is much more similar to the present case and it should lead the Court to conclude there is a genuine issue of material fact as to whether or not the force used by Officer Raethke was excessive.

- As in the present case, the plaintiff in *Meredith* was not attempting to flee at the time excessive force was used. *Meredith* at 1061.

- Nor was she posing any safety risk. *Id*. At the time Officer Raethke struck Mr. Barror with his knee, he was no longer a safety risk. In fact, all three officers on the scene had holstered their weapons before Mr. Barror was even removed from the vehicle.

***Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003):**

This case is likewise similar to the present case:

- Officers knocked the plaintiff down and struck him with their knees. *Drummond* at 1054. Almost identical to the present scenario. This was deemed excessive in *Drummond* (at 1060) and should also be considered excessive in the present case.


**The Possible Presence of a Firearm Does Not Excuse Officer Raethke's Actions**

Defendants' motion makes several mentions of that fact that one of the vehicles (either Mr. Barror's or a vehicle following Mr. Barror) may have had a firearm, which is supported by the dispatch records. *Declaration of Jefferey Hansen, Exhibit 3*. The possibility of one of these

vehicles having a weapon does not justify the force used against Mr. Barror. When the officers arrived on the scene, it had been reported that the female in the silver car pulled a gun. *Id*. at page 15. However, there is a distinct difference in how Mr. Barror and this female were treated.

Trooper Killens' police report shows how a reasonable officer should handle such a situation. *Declaration of Justin Steffen, Exhibit 5*. After Mr. Barror was detained, Trooper Killens talks to the reporting party, Samantha Cain-Sims, who decided to follow Mr. Barror after she disapproved of his driving. *Id.* at page 4-5. This is the woman whom Mr. Barror was trying to get away from because he thought he saw a gun in her car and she was following him). *Id*. at page 7.

There was indeed a toy gun in the car (presumably the gun seen by Mr. Barror). *Id.* at page 5. Note the behavior of Trooper Killens in this scenario. He merely asks Ms. Sims if he can search her car and she says yes. *Id*. That's it. No screaming. No knee strikes. A far cry from Officer Raehtke's claims that Mr. Barror needed to be struck with his knee because he might have a firearm on his person. Ms. Sims might also have had a firearm, but she was not pulled to the ground and assaulted.


**Plaintiff's Claim Regarding a Failure to Train Should be Allowed to Move Forward**

Officer Raethke's testimony provides ample evidence that the City of St. Helens has not properly trained their officers on the proper use of force:

- Officer Raethke is unaware of any use of force training by the City of St. Helens that relates to detaining individuals with physical disabilities. *Declaration of Justin Steffen, Exhibit 3*, pages 2-3.

- Officer Raethke received no training related to verbal conflict and control with the City

Page 9 – **RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

of St. Helens prior to August 6th, 2019 (the date of Mr. Barror's arrest). *Id.* at page 16.

- Sergeant Eustice of the City of St. Helens Police department has, "identified several areas where further training is needed" for recruit and lateral officers. *Id.*

- De-escalation techniques were not part of the training or policy for the City of St. Helens Police Department at the time of Mr. Barror's arrest. *Id.* at page 26-27.

The use of force policy for the City of St. Helens (consisting of only 8 pages) does not contain any guidance regarding the use of force when a suspect is physically disabled or incapacitated (such as being unable to raise their hands). *Declaration of Sergeant Evin Eustice, Exhibit 5*.

In *Board of the County Commissioners v. Brown*, 520 U.S. 397 (1997), the Supreme Court discussed when a single incident could lead to a finding of deliberate indifference on the part of a local government:

> "The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice-- namely, a violation of a specific constitutional or statutory right. The high degree of predictability may also support an inference of causation--that the municipality's indifference led directly to the very consequence that was so predictable." *Board of the County Commissioners v. Brown*, 520 U.S. 397, 409- 410 (1997).

This is the exact scenario we have here. At a minimum, there is a genuine issue of fact as to whether or not a failure to train officers regarding less violent uses of force, de-escalation techniques, verbal conflict resolution, and how to properly arrest physically handicapped individuals amounts to deliberate indifference. A reasonable jury could find that the failure to train officers in these areas could lead to an unconstitutional amount of force being used to arrest a person.

Page 10 – **RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**CONCLUSION**

In summary, the Court should deny Defendants' motion in its entirety and allow Mr.

Barror to have his claims heard in front of a jury.


Respectfully submitted:  1/2/23


s:/ <u>Justin Steffen</u>
    Justin Steffen, OSB #122411
    *Attorney for Plaintiff*
    Steffen Legal Services, LLC
    2100 SE Lake Rd. #5
    Milwaukie, OR 97222
    971-570-9225
    info@steffenlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Response to Defendants' Motion for Summary Judgment on Defendants via the ECF filing system on 1/2/23.

Dated:  1/2/23

s:/ Justin Steffen
Justin Steffen, OSB #122411
*Attorney for Plaintiff*
Steffen Legal Services, LLC
2100 SE Lake Rd. #5
Milwaukie, OR 97202
971-570-9225
info@steffenlegal.com

**CERTIFICATE OF SERVICE**, page 1 of 1