**John R. Barhoum, OSB No. 045150**
Email: john.barhoum@chockbarhoum.com
**Jeffrey W. Hansen, OSB No. 923290**
Email: jeff.hansen@chockbarhoum.com
Chock Barhoum LLP
121 SW Morrison St., Suite 500
Portland, OR  97204
Telephone: 503.223.3000
Facsimile:  503.943.3321
     Attorneys for Defendants City of Saint Helens and
     Adam Raethke

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROBERT BARROR, | Case No.  3:20-cv-00731-SB |
| Plaintiff, | |
| v. | **DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S REPLY IN SUPPORT OF SUMMARY JUDGMENT** |
| CITY OF SAINT HELENS, and ADAM RAETHKE, in his individual capacity, | |
| Defendants. | |

## REPLY

    Defendants City of Saint Helens ("the City") and Officer Adam Raethke ("Ofc. Raethke") (collectively "Defendants") submit the following reply in support of their motion for summary judgment.  This reply is supported by the declaration of Jeffrey Hansen ("Hansen Decl."), the exhibits attached thereto, and the following memorandum of law.

## MEMORANDUM OF LAW

1. _There is no evidence that the Oregon State Troopers were given information that Mr. Barror had a firearm, and therefore the fact that they handled Mr. Barror's arrest differently is not relevant to the question of whether Ofc. Raethke used reasonable force because it does not reflect the entirety of the circumstances that Ofc. Raethke was operating under._

Plaintiff's main argument is that because the Troopers did not respond to the incident with Mr. Barror with the same 'level 'of force as Ofc. Raethke, this creates an issue of material fact. However, this argument is negated by the fact that the Troopers were not operating with the same information Ofc. Raethke possessed indicating that Barror possibly had a firearm.  As will be explained in more detail below, because the authority governing use of force requires a court to consider the totality of the circumstances present for a responding officer, it is irrelevant that the Troopers responded differently because they were responding to the scene with different information than Ofc. Raethke had when he arrived to assist the Troopers.

Both Trooper Cowen's testimony and the Columbia County Sheriff dispatch records indicate that there was no mention of a firearm until after Barror pulled his truck over.  Trooper Cowen testified, "So I remember hearing the driver yell out something about the other vehicle having a firearm.  So, this was when we conducted the high risk traffic stop and so it was fairly early on, and I would have to go back and review video -- I just can't remember if I put it out over the radio or if I just yelled it out to the Saint Helens officers that responded on scene."  Hansen Decl., ¶ 2, Ex. 3, p. 31:3-9.  This testimony is corroborated by the 911 dispatch log for Columbia County Sheriff that confirms that the Troopers had stopped Barror's Silverado and were waiting for cover when there is a report that the "female in the silver car pulled a gun."  _Id_. at ¶ 7, Ex. 5. Thus, it is evident that the troopers on scene were only under the assumption that a gun was in the

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

CIS140.0007

silver car that they had passed earlier while still in pursuit of Barror's truck.[1]  As established in Defendants' initial motion, Ofc. Raethke was conveyed information through his own dispatcher that Barror possibly had a gun.  *Id.* at Ex. 3; ¶ 2, Ex. 1, 19:18-22.  Furthermore, there is no evidence of any communication between the Troopers and Ofc. Raethke regarding whether Barror had a weapon before the officers approached the truck.  Therefore, there was no opportunity in which the Troopers clarified the information they had obtained during the course of their interaction before Saint Helens PD arrived.  If the Troopers were not under the impression that Barror had a weapon, like Ofc. Raethke was, then it is also reasonable to conclude that their opinion of the level of threat that Barror presented would differ from Ofc. Raethke's and would explain why the Troopers did not necessarily find Barror dangerous or chose to only employ open-hand arresting techniques to this arrest as they stated in their depositions.

A use of force analysis requires a court to consider whether the use of force, or the seizure of an individual, is reasonable. *Graham*, 490 U.S. at 394-95.   Whether an officer acted reasonably depends on the totality of the circumstances surrounding the encounter.  *Id.*  When evaluating the use of force in court, the particular use of force must be judged from the perspective of a reasonable officer on scene and not 20/20 hindsight.  *Id.*  Here, we have two sets of officers from two different agencies, each with different information about the suspect and the risk he presents to the responding officers.  One set of information – the information that Ofc. Raethke has that Barror possibly has a gun – renders the encounter with Barror far more dangerous, especially in light of the fact that Barror had previously eluded officers and failed to comply with any lawful commands.

---

[1] Defendants note that Trooper Killens testified that to his recollection, there was one firearm in one of the vehicles but could not say one way or the other if it was in the silver car or in Barror's truck.  Thus, there is nothing in Trooper Killens' testimony that negates the assertion the Troopers were not operating under the possibility that Barror had a firearm.  See Steffen Decl., Ex. 1, p. 10.

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

CIS140.0007

Since there is a striking difference in the information that the State Troopers have and the information that Ofc. Raethke has, this court cannot compare their actions in terms of what is or is not reasonable because the totality of the circumstances is different between these two sets of actors. Put differently, since the Troopers were not operating under the possibility that Barror had a firearm, the fact that they responded differently to Barror's arrest does not create an issue of material fact because they are not operating under the same 'totality of circumstances' that Ofc. Raethke is. Summary judgment is appropriate because Ofc. Raethke's decision to deliver knee strikes to an individual who he believed to be armed and who was resisting arrest was reasonable under the totality of the circumstances.

2. *The remaining testimony of the Troopers cited by Plaintiff does not create an issue of material fact as to whether Ofc. Raethke used excessive force during his interaction with Mr. Barror because it is irrelevant to the factors or issues a court must considered when evaluating a use of force claim.*

Plaintiff argues that several other aspects of state troopers' deposition testimony creates an issue of fact relating to whether Ofc. Raethke used excessive force during his interaction with Mr. Barror. More specifically, Plaintiff identifies several portions of Trooper Killens' deposition testimony which consist of the following: (1) Ofc. Raethke shoved past the troopers; (2) Ofc. Raethke was screaming and cursing; (3) Trooper Killens holstered his weapon to help Barror to the ground; (4) Trooper Killens received training on how to arrest physically disabled individuals; (5) Trooper Killens reported Ofc. Raethke's use of force to his boss; and (6) Barror was not actively resisting arrest.

As an initial matter, several of these points have nothing to do with the amount of force used by Ofc. Raethke. For example, the fact that Ofc. Raethke may have shoved past the Troopers, that Trooper Killens holstered his Taser to get Mr. Barror to the ground, or that Ofc. Raethke was screaming of cursing literally has nothing to do with whether the subsequent knee strikes constitute

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

CIS140.0007

as excessive force.  These are not facts that speak to the totality of circumstances.  Ofc. Raethke is responding to a high risk traffic stop and factual circumstances that would dictate whether or not he would use force to effectuate an arrest because they do not speak to actions of the suspect that the officer is responding to.  Similarly, whether Trooper Killens received training related to arresting physically disabled individuals is irrelevant.  There is no information or evidence suggesting Mr. Barror was physically disabled.  Ofc. Raethke and Trooper Killens are employed at different agencies and would receive different training, and again has nothing to do with the information or actions of the suspect at the time of the arrest.  Lastly, the fact that Trooper Killens discussed the arrest with a superior officer does not establish a question of fact that there was excessive force.  There is nothing in Trooper Killens testimony that an investigation was pursued, that the superior officer believed one way or the other that excessive force was used, or that Ofc. Raethke's actions were questionable.  The conclusion that these pieces of testimony are not indicative issues of fact is further solidified by the fact that Plaintiff is unable to point to any statute or court authority that considered such elements in deciding of whether a police officer has used excessive force.  Instead, as argued in Defendants motion, the relevant inquiry is whether the officer acted reasonably in light of the totality of the circumstances surrounding the encounter. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).  Since none of these aspects of Troopers' Killens testimony relate to the event that occurred during the encounter with Barror, they are not irrelevant to the question presented by Defendants' motion for summary judgment of whether Ofc. Raethke's use of force was reasonable.

There are other aspects of the testimony selected by Plaintiff that are taken out of context. For example, Plaintiff states that "Mr. Barror was ***not*** actively resisting his removal from the vehicle."  Pltf. Resp., p. 4.  Such testimony is, first of all, entirely contradicted by the dashcam

video that demonstrates three officers working together to pull Mr. Barror out of the vehicle.[2]  Put

frankly, if Mr. Barror was truly not actively resisting, there would not have been the need for three

officers to remove him from the vehicle, and no reasonable juror could conclude after seeing the

dash cam footage that Mr. Barror was "not actively resisting."  It is simply a misleading or self-

serving summation of the testimony itself.  The testimony cited by Plaintiff reads as follows:

> "Mr. Barror was not being -- I guess **he was being uncooperative**, but not in a manner that appeared dangerous to me as we got the door open.  Just more of a frantic behavior.  Once we got the door open, we noticed that he still had his seat belt on.  And **while requesting him to get out of the truck, we found that not to not be possible**.  So we assisted by helping him unbuckle a seat belt, try to get it around his arm.
>
> At some point during that spot in the story is when Officer Raethke was behind me and to my right. Me and Trooper Cowan were in the vehicle door. The two of us were.  I heard it loud screaming and cursing.  And then I actually felt him shoved past me **as we're trying to pull Mr. Barror from the vehicle and to take him into custody**.
>
> My recollection next was trying to get my -- because I had switched over from lethal to non-lethal, so I went from my duty weapon to my Taser.  **As we were trying to get him out of the car**, I remember putting my Taser away and then helping Mr. Barror to the ground, who was now out of the vehicle." Steffen Decl., Ex. 2, p. 11-12 (emphasis added).

Nowhere in that testimony does Trooper Killen state that Mr. Barror was "not actively

resisting."  Instead, his testimony confirms the opposite and his response to holster his firearm and

draw his taser.  He indicates that Mr. Barror was being uncooperative, that Mr. Barror was not

compliant with requests to get out of the car, that the officers were trying to pull him out of the car

and felt it necessary to consider force in the form of his taser.

---

[2] Additionally, Trooper Cowen's testimony confirms that three individuals were needed to pull Barror from the vehicle.  He states in his deposition, "We were able to pull him out of the vehicle. It was Trooper Killens, myself, and Officer Raethke. We got the driver to the ground and, again, we were trying to get his hands behind his back. I believe if I remember correctly I had his right arm and [Trooper Killens] was trying to get left arm possibly. And then we finally got him into custody. Hansen Decl. ¶ 2, Ex. 3, p. 17:11-14 (emphasis added).

Plaintiff also cites testimony from Trooper Cowen that is not relevant whether the totality of the circumstances justify Ofc. Raethke's use of reasonable force. Some of the testimony cited includes: (1) information that the silver vehicle following Barror had a gun; (2) Mr. Barror's hand were visible the entire time and that he did not appear to have a firearm in his hands; (3) Mr. Barror was not actively fighting the Troopers; (4) Trooper Cowen had to verbally order Ofc. Raethke to stop striking Barror; and (5) Ofc. Raethke sounded angry.

As noted above, some of these factors have no bearing on whether Ofc. Raethke used excessive force. The fact that there was information that the silver vehicle may have had a gun is irrelevant because there is no evidence to suggest that Ofc. Raethke had that information upon arriving at the scene of Barror's stopped truck. In fact, from the time Ofc. Raethke arrives on the scene there is no indication that either trooper requested a "time out" or opportunity to inform Raethke of who may or may not have a firearm. Similarly, the fact that Ofc. Raethke may have sounded angry does not bear any weight to the question of whether the force used was reasonable in the circumstances. Lastly, while it is true that Mr. Barror did not have a gun in his hand and the officers could see his hand does not create an issue of material fact that the amount of force used by Ofc. Raethke is unreasonable because, as stated several times, Ofc. Raethke had information that Barror was possibly armed, and it was not until after Barror was taken into custody could he confirm one way or another that there was no firearm on his person. While it is true that Barror ultimately did not have a firearm on him, courts are not allowed the benefit of hindsight when determining if the amount of force was appropriate. *Graham*, 490 U.S. at 394-95. Thus, Ofc. Raethke's actions must be evaluated with the understanding that there was a report that Barror had a firearm.

/ / /

Additionally, many of these conclusory statements made in plaintiff's response take the deposition testimony out of context. For example, while it is true that Officer Cowen did state in his deposition that Barror was not "actively fighting," but he does confirm that Barror was being uncooperative and failing to comply with any commands by the officers. The entire quote reads, "And I went to unbuckle his seat belt. Then I holstered my firearm, grabbed ahold of the driver and **I could feel him tense up**, and I tried to pull him out of the vehicle. Again, **he was tensing up**. He wasn't like actively fighting us but he wasn't doing anything to assist in -- **he wasn't doing anything to help the situation by getting out of the vehicle**. Hansen Decl., ¶ 2, Ex. 3, p. 14:2-10 (emphasis added). Again, this testimony confirms that Plaintiff was entirely uncooperative and failing to comply with lawful commands. Unlike the Troopers, Ofc. Raethke is interpreting this failure to cooperate with the additional information that this individual may be armed.

Finally, Trooper Cowen does not testify that he commanded Raethke to stop delivering knee strikes. The relevant testimony states:

> Q.  Well, do you recall Officer Raethke striking Mr. Barror with his knee?
>
> A.  So – yes. So, it was towards the end. I remember at the time from my perception I saw the knee strike and then I ended up yelling out, "He's good. He's good. And then Officer Raethke no longer used a knee strike after I said, "He's good. He's good." […] I just remember yelling, "He's good. He's good," and, yeah, there was no other force.
>
> Q.  And why did you feel the need to say "He's good. He's good" to Officer Raethke?
>
> A.  Because I felt that we had [Barror] under control and no further force needed to be used and he was in our custody.
>
> Q.  Were you concerned that Officer Raethke is going to strike Mr. Barror again?

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

A. I don't know what his mindset was at this time. I just made it
very clear and I wanted to vocalize it that no more force needed to
be used after. Hansen Decl. ¶ 2, Ex. 3, 14:20-25, 15:1-20 (emphasis
added).

Nowhere in this testimony does Trooper Cowen state that he is ordering or commanding Ofc.

Raethke to do anything. As his testimony states, he was only trying to vocalize that no additional

force was needed. In other words, he was merely communicating that the suspect was now in

custody. Plaintiff's position that Trooper Cower was ordering Ofc. Raethke is not an accurate

representation of the deposition testimony and takes the communication made by Trooper Cowen

out of context.

Here, the additional testimony cited by plaintiff does not create an issue of material fact

because they are not relevant to the totality of circumstances that a court must consider when

evaluating whether an officer's decision to use force was reasonable. These are not facts or

information that Ofc. Raethke was aware of, witnessing or operating off of at the time that he was

making the arrest of Barror. For these reasons, summary judgment is appropriate.

3. *Ofc. Raethke's testimony does not create an issue of material fact because the portion of
his testimony that Plaintiff relied upon are not relevant to the standards used to evaluate
whether the force used was reasonable.*

Plaintiff identifies various excerpts of Ofc. Raethke's deposition, yet again, none of these

statements create an issue of material fact because they do not speak to the totality of the

circumstances that Ofc. Raethke was interpreting and operating under when he was at the scene of

Barror's arrest. To summarize, Plaintiff points to the following portions of Ofc. Raethke's

deposition: (1) Ofc. Raethke was unaware of any use of force training for individuals with

disabilities; (2) Ofc. Raethke put his firearm away, thus negating the notion that he perceived

Barror as a threat; (3) Ofc. Raethke did not hear Barror say he could not raise his hands; (4) Ofc.

Raethke did not hear Trooper Cowen say "he's good."; (5) Ofc. Raethke's body cam footage is

not available; (6) Ofc. Raethke received no verbal conflict and control training; (6) Sgt. Eustice identified "several areas where further training is needed" for Ofc. Raethke; (7) Sgt. Eustice observed that Ofc. Raethke's tone and body language seemed amplified during Barror's arrest; (8) Sgt. Eustice and Ofc. Raethke agreed that the video footage of the scene "did not look good;" (9) de-escalation techniques were not part of the training at the time of Barror's arrest.

Like before, the majority of these 'issues of material fact' can be discarded because they literally have no relation to the series of events that Ofc. Raethke was perceiving at the moment he was engaged in attempting to effectuate Barror's arrest.  Whether an officer has undergone specific training, or training related to arresting those with disabilities or de-escalation techniques does not have anything to do with whether the officer's actions were reasonable in light of the totality of the circumstances at the time that Ofc. Raethke was at the scene of the incident.  The fact that Ofc. Raethke's body cam footage was inadvertently lost does not create an issue of material fact relating to whether Ofc. Raethke's actions were reasonable in light of the totality of the circumstances at the time that he was at the scene of the accident.  The fact that Ofc. Raethke and Sgt. Eustice agree that Ofc. Raethke's body language was elevated, that further training may be needed, and that the footage "does not look good," does not establish an issue of material fact relating to whether Ofc. Raethke's actions were reasonable in light of the totality of the circumstances at the time that he was at the scene of the accident.

Only three of these points have to do with events that occur at the scene of the accident, and thus might be considered part of the totality of the circumstances that must be analyzed in a use of force case.  Again, however, it is clear how these points create no issue of material fact. Plaintiff asserts that excessive force is present because Ofc. Raethke did not hear Barror claim that he could not put his hands up or that he did not hear the Troopers say, "He's good," even though

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

CIS140.0007

such statements are audible on the dashcam footage.  Even accepting this fact in the light most favorable to the non-moving party and accepting that Ofc. Raethke should have heard such comments, or even that Ofc. Raethke did hear such comments, they are not so material to defeat summary judgment.  Ofc. Raethke is still operating under the assumption that he is approaching an individual that he knows has eluded police, failed to cooperate or obey any commands, is possibly armed with a firearm, and who, once they make contact, struggles immensely and resists arrest.  There is no reasonable individual who conclude that had Ofc. Raethke heard Barror say that he cannot lift his arms that he should have acted any differently in light of the other undisputed facts of the case.  Furthermore, the comments by Trooper Cowen saying "He's good. He's good" occur after the use of force has been applied.  Whether Ofc. Raethke heard it or not is irrelevant to the question of whether the force applied prior to those statements was reasonable in light of the totality of the circumstance present at the time Ofc. Raethke was making the arrest.  Lastly, Ofc. Raethke explains in his deposition that he holsters his weapon because he cannot grab someone and effectuate an arrest if his is holding a firearm.  Hansen Decl. ¶ 2, Ex. 1, p. 17:20-22.  And even so, there is again no explanation or authority that supports the notion that holstering a service weapon while attempting to arrest a possibly armed suspect somehow diminishes the risk the officer is facing, or believes he is facing when attempting to make an arrest and deciding what level of force is necessary to effectuate that arrest.  Consequently, east of these portions of Ofc. Raethke's testimony are not material facts that defeat Defendants' summary judgment motion.  They are all either entirely irrelevant to the standard that is applied to a use of force analysis or are so insignificant that they have no material effect on the overall analysis.

/ / /

4.  _The case law cited by defendants is relevant and supports their motion for summary judgment._

Plaintiff makes various arguments that the case law cited by Plaintiff is factually distinct from the present case or does not actually support the arguments made by Defendants. Defendants refute each of these claims below:

Plaintiff argues that Defendants misapplied _Johnson v. County of Los Angeles_, 340 F.3d 787 (9th Cur. 2003), because it was decided on the basis of qualified immunity, because with suspects who were known to be armed rather than a suspect who was possibly armed, and that here there is no question that the knee strikes were used to stop Barror's resistance (whereas the officer in _Johnson_ did not make contact with the suspect with any significant force).  It is true that the _Johnson_ court was evaluating whether the officer was entitled to qualified immunity.  However, as the court notes, the question of whether qualified immunity is applicable requires a two step-analysis: a constitutional inquiry and an immunity inquiry.  _Id_. at 791 (citing _Saucier v. Katz_, 533 U.S. 194, 201, 121 S.Ct. 2151, (2001)).  Thus, to satisfy the qualified immunity analysis, the court first had to determine whether the deputy violated the suspect's Fourth Amendment right to be free from excessive use of force.  _Id_. at 792.  It is this analysis that Defendants draw parallels to in the present case and is entirely relevant to Defendants' motion. Furthermore, the fact that the deputy in this case did not forcefully use his knee, whereas Ofc. Raethke undisputedly did, does not make this case so distinguishable that it should be discarded as irrelevant.  The suspect in _Johnson_ argued that the force used to effectuate his arrest (that the officer was pulling a forcibly twisting his body as he was pulled from a crashed vehicle) was excessive and caused his injuries, just as here Barror argues that the force used to effectuate his arrest (the knee strikes intended to cease Barror's resistance) caused injury.  In mechanism that causes injury a sole part of the analysis; the question is whether the officer's actions – whether it is forcibly pulling a suspect from a crashed vehicle or

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

CIS140.0007

delivering knee strikes to gain control of a suspect continuing to resist arrest – is reasonable.

Plaintiff argues that *Miller v. Clark County*, 340 F.3d 959 (9th Cir. 2003) is similarly distinguishable because the suspect in this case was known to armed, was fleeing from the cops at the time of his arrest, and the force used was a police dog bite rather than a knee strike. Again, Defendants disagree that this case is so factually distinct that is merits disposal from the analysis. Hansen Dec., ¶6, , p.5. During the course of the officers' interaction with Barror, he did elude officers failed to comply with lawful commands and struggled so fiercely with the officers that it required three individuals to pull him from his car. This is certainly factually parallel to an individual who similarly refused to pull over when the officer turned on his lights and continued to elude officers rather than comply with their lawful commands. *Id*. at 960-61. Additionally, the statement that the deputy in *Miller* knew the suspect to be armed is incorrect. The opinion specifically states that "Deputy Bylsma **did not know** whether Miller [the suspect] was armed." *Id*. at 965 (emphasis added).

Plaintiff argues that *Meredith v. Erath*, 342 F.3d 1057, 1060 (9th Cir. 2003), supports denial of Defendants' summary judgment claim because the plaintiff in this case was not attempting to flee at the time excessive force was used and she was not posing a safety risk. Plaintiff argues that like the *Meredith* plaintiff, Barror was not attempting to flee at the time excessive force was applied and he was no longer a safety risk. Both of these statements are patently false. At the time that Ofc. Raethke applied the knee strikes, Barror was struggling so much that three police officers were having difficulty getting him under control. This is again, after a high speed chase where he failed to pull over, failed to comply with any lawful commands, and was by all accounts of the officers present, being entirely uncooperative. Nor is it true that Barror was not a safety risk. Ofc. Raethke was provided information that he possessed a firearm.

At the time the knee strikes were delivered no firearm had been recovered or secured at the scene. This is, by definition, a safety risk to the officers responding to the call. The fact that no firearm was ultimately discovered is not material to the analysis as there is no benefit to hindsight when analyzing a use of force claim. *Graham*, 490 U.S. at 394-95.

Finally, Plaintiff argues that *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003) is like the present case for the simple fact that in both cases the officer struck the suspect with their knees. As has been repeated numerous times, the mechanism of injury-causing force is not the sole deciding factor in determining whether an officer's actions were reasonable or whether a Fourth Amendment violation has occurred. A court must take into consideration the totality of the circumstances when determining whether the force used was excessive. Consequently, the fact that it was determined that an officer's use of knee strikes in one case was deemed excessive does not de facto render all other cases in which a knee strike is used constitutional violations. As Defendants argued in their initial motion, the totality of the circumstances in *Drummond* differ significantly from the totality of the circumstances in the present case. The plaintiff in *Drummond* had not committed an underlying crime, the force was applied after the plaintiff was under control by the officers, and there was no evidence that the plaintiff was resisting. *Id*. at 1057. As has been established by the undisputed facts of the present case, there was probable cause that Barror committed several crimes, endangered members of the public with his driving, continued to resist arrest and the force applied occurred before the officers had him under control. This case, like the others discussed above support summary judgment in favor of the Defendants.

/ / /

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

CIS140.0007

5. *The presence of a possible firearm is entirely relevant to the issue of whether Ofc. Raethke used excessive force because it is a pertinent detail in the totality of the circumstances that directly dictated how Ofc. Raethke responded to this incident.*

Plaintiff asserts that the possibility of a firearm is irrelevant to the summary judgment analysis because the possibility of a weapon does not justify the use of force.  This argument is not consistent with the extensive authority that requires a consideration of the totality of the circumstances when evaluating whether excessive force has been applied.  Plaintiff first points out that it was reported that a female in the silver car pulled a gun.  While this may be true, it is also indisputable that this information was not communicated to Ofc. Raethke, and that instead, Ofc. Raethke believed that Barror was the individual who was potentially armed, and Plaintiff has presented *no evidence* to suggest that Ofc. Raethke should have known that Barror was not armed or that the information he received was otherwise inaccurate.  Furthermore, as discussed above, the evidence undisputedly shows that the Troopers were not operating with the information that Barror was possibly armed, and therefore that difference in information makes their actions and decision-making significantly different from Ofc. Raethke's.  Summary judgment is not destroyed simply because the Troopers found that less force was necessary because the totality of the circumstances that they were operating under was remarkably different from the totality of circumstances that Ofc. Raethke was operating under.   And again, the fact that the female who reportedly had a gun is treated differently is again explained by the totality of the circumstances. There is no evidence that she fled from police, failed to comply with commands, resisted arrest or reacted with any hostility towards the officers.  The presence of a potential gun is a material fact that justifies the use of force in this case and supports Defendants' motion for summary judgment.

/ / /

/ / /

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

CIS140.0007

6.  *Simply identifying generic areas of training that the City of Saint Helens failed to provide does not establish an issue of material fact that the City was deliberately indifferent to the Constitutional rights of members of the public.*

Plaintiff has failed to identify an issue of material fact that the City of Saint Helens failed to adequately train its officers because there is no evidence to suggest that the generic shortcomings of the City's trainings would actually prevent the type of harm that Barror encountered.  Plaintiff makes sweeping statements that the City of Saint Helens did not have specific use of force training for individuals with disabilities, did not offer training related to verbal conflict and control and that de-escalation techniques were not part of the City's training.  There are several issues with these broad assertions.  Aside from the fact that Plaintiff offers no explanation of what this training is supposed to entail, there is still no evidence that the City was deliberately indifferent towards these issues.  For example, the assertion that the City needed to administer special use of force training for individuals with disabilities is not supported by any evidence or argument that individuals with disabilities are statistically more likely to be injured during an arrest or a victim of Fourth Amendment violations.  With literally thousands of different physical disabilities present within the human race, it would be nearly impossible to create a unique use of force training for such disabilities – especially when not all physical disabilities are readily visible or obvious.[3]  Not to mention, the idea that an officer must stop to evaluate the potential disabilities of every suspect when they have a greater interest in protecting the public, themselves, and their colleagues is absurd when these interactions can happen in a matter of seconds.  There is similarly a lack of evidence to support Plaintiff's sweeping argument that training related to verbal conflict and

---

[3] To the extent that Barror has a physical disability, which, notably, Plaintiff produces no evidence of such a physical disability, no officer reporting to the scene made any mention of seeing or identifying a physical disability when contacting Barror, or that the fact that Barror had a disability impacted how they approached the scene of Barror's arrest.

DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

CIS140.0007

control or de-escalation techniques would have prevented Barror from the alleged harm of a Fourth Amendment violation.

Furthermore, the City's use of force policy does contemplate that an officer must evaluate the reasonableness of force under the facts and circumstances perceived by the officer at the time of the event. Thus, if an officer perceives that an individual is in a wheelchair and perceives that the individual is not a flight risk, using less force would be appropriate, in the same manner that it would be appropriate to use more force against the same individual if that individual was resisting arrest or brandishing a weapon. Thus, the idea that the use of force policy is deliberately indifferent to the idea that an officer may have to interact with physically disabled individuals is incorrect. This is especially true given hat the policy itself states: "Given that no policy can realistically predict every possible situation an officer might encounter, Officers are entrusted to use well-reasoned discretion in determining the appropriate use of force in each incident." Eustice Decl. ¶ 2, Ex. 5, p. 36-37.

Simply identifying general and specific shortcomings of the City's training program does not establish an issue of material fact that the City failed to train its officers. Plaintiff provides no evidence that these vague trainings were avoided or ignored by the City in a manner that demonstrates deliberate indifference. As Defendants argued in their original motion, it is undisputed that St Helene's police officer undergo regular use of force training and that is consisted with Oregon and Federal law. Barror has failed to produce any evidence that suggests that the use of force policy and training that the officers undergo is insufficient, inadequate, contrary to the law, or otherwise improper so that it is obviously likely that the constitutional rights of an individuals will be violated. He likewise has not proffered any expert opinions, established a pattern of constitutional violations among the department or established that a material question

of fact exists that would allow a reasonable jury to conclude that the City is deliberately indifferent to training its officers to use the appropriate amount of force when attempting to make an arrest. The law allows, and the St Helens' use of force policy states, that force is reasonable to the extent the officer reasonably believes it necessary to make an arrest and to defend themselves or third persons from harm. Without more, Plaintiff's broad assertions that training specific to the use of force with physically disabled individuals, verbal conflict and control and de-escalation techniques should have been part of the City's training curriculum are not sufficient to raise an issue of material fact. Summary judgment should be granted.

7. *Plaintiff has no expert analysis supporting his conclusion he the use of force was excessive.*

Plaintiff cannot simply defeat summary judgment by generally asserting that the use of force was excessive. Plaintiff is not a trained police officer, does not have any law enforcement training and is not otherwise qualified to analyze what type of force is, or is not appropriate in a given circumstance. Furthermore, Plaintiff has not produced any expert or third-party analysis from a qualified individual opining on whether the force used exceeded constitutional bounds. A lack of such testimony or analysis further reinforces that Plaintiff has failed to raise an issue of material fact relating to either Plaintiff's use of force claims or his failure to train claim. For this reason, Defendant's motion for summary judgment should be granted.

## CONCLUSION

Plaintiff has not identified an issue of material fact that should be left to a jury to decide. Plaintiff's best evidence is that two other officers, Troopers Killens and Cowen, behaved differently that Ofc. Raethke while responding to the same incident. However, the evidence indisputably shows that the Troopers had received distinctly different information about the risk of approaching Barror's vehicle and apprehending him than Ofc. Raethke. The court must take

into consideration the totality of the circumstances known to the officer responding to the incident. Here, Ofc. Raethke knew that Barror had been driving at high rates of speed, endangered the public, eluded police officers, failed to comply with lawful commands, reportedly had a firearm, and was struggling with police at the moment that he decided to deliver the knee strikes. This use of force was reasonable given the circumstances and is consistent with case law governing the use of force. As a result, Defendants respectfully request that this court grant their motion for summary judgment.

RESPECTFULLY SUBMITTED this 20th day of January, 2023.

CHOCK BARHOUM LLP

John R. Barhoum, OSB No. 045150
Email: john.barhoum@chockbarhoum.com
Jeffrey W. Hansen, OSB No. 923290
Email: jeff.hansen@chockbarhoum.com
    Attorneys for Defendants City of Saint Helens and
    Adam Raethke

**John R. Barhoum, OSB No. 045150**
Email: john.barhoum@chockbarhoum.com
**Jeffrey W. Hansen, OSB No. 923290**
Email: jeff.hansen@chockbarhoum.com
Chock Barhoum LLP
121 SW Morrison St., Suite 500
Portland, OR  97204
T: 503.223.3000

        Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ROBERT BARROR,                                     Case No. 3:20-cv-00731-SB

        Plaintiff,

                                          **CERTIFICATE OF SERVICE**

        v.

CITY OF SAINT HELENS, and ADAM
RAETHKE, in his individual capacity,

        Defendants.

I hereby certify that on the 20th day of January, 2023, I will electronically file the foregoing

with the Clerk of the Court using the CM/ECF system, which will then send a notification of such

filing to all registered individuals.  Additionally, I hereby certify that a true copy of the foregoing

**DEFENDANTS CITY OF SAINT HELENS AND ADAM RAETHKE'S REPLY IN

SUPPORT OF SUMMARY JUDGMENT** was served as stated below on:

Page 1        **CERTIFICATE OF SERVICE**
CIS140.0007

Justin Steffen
Steffen Legal Services, LLC
2100 SE Lake Road, #5
Milwaukie, OR 97222
    *Attorneys for Plaintiff*

☐ By hand delivery
☐ By first-class mail*
☐ By overnight mail
☐ By facsimile transmission:
   Fax #:
☑ By e-mail:
   info@steffenlegal.com
☑ By U.S. District Court CM/ECF e-filing
   service to registered parties

**\***With first-class postage prepaid and deposited in Portland, Oregon.

DATED this this 20th day of January, 2023.

**CHOCK BARHOUM** LLP

John R. Barhoum, OSB No. 045150
Email: john.barhoum@chockbarhoum.com
Jeffrey W. Hansen, OSB No. 923290
Email: jeff.hansen@chockbarhoum.com
   Attorneys for Defendants City of Saint
   Helens and Adam Raethke

Page 2     **CERTIFICATE OF SERVICE**

CIS140.0007