Aaron P. Hisel, OSB #161265
*aaron@capitol.legal*
Rebeca A. Plaza, OSB #053504
*rebeca@capitol.legal*
Capitol Legal Services
901 Capitol St. NE
Salem, OR 97301
    Telephone: (503) 480-7250
    Fax: (503) 779-2716
        Attorneys for Defendants City of St. Helens
        and Adam Raethke

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

ROBERT BARROR,                                           Case No. 3:20-cv-00731-AN

                    Plaintiff,

                                                         **OFFICER RAETHKE'S MOTION FOR**
        v.                                               **SUMMARY JUDGMENT ON**
                                                         **QUALIFIED IMMUNITY**

CITY OF ST. HELENS, and ADAM
RAETHKE, in his individual capacity,

                    Defendants.

## LR 7-1 CERTIFICATION

Counsel for Defendants City of St. Helens and Adam Raethke ("Defendants") conferred

with Plaintiff on Defendants' Motion for Leave to File a Limited Dispositive Motion on qualified

immunity. (ECF Nos. 63-64). Plaintiff objected to the Motion. (ECF 64, ¶ 2). The Court granted

Officer Raethke's Motion for Leave over Plaintiff's opposition. (ECF 68).

Page 1 – **OFFICER RAETHKE'S MOTION FOR SUMMARY JUDGMENT ON
        QUALIFIED IMMUNITY**

## MOTION

Pursuant to Fed. R. Civ. P. 56, Officer Adam Raethke moves the Court for an Order granting Summary Judgment in his favor on the basis that there are no material disputes of fact and Defendants are entitled to judgment as a matter of law. Specifically, and consistent with the Court's Order (ECF 68), Officer Raethke moves the Court for summary judgment on the limited issue of qualified immunity.

In support of this Motion, Defendant relies upon;

(a) The pleadings and evidence on file with the Court; and

(b) The Memorandum of Law below.

## INTRODUCTION

The only claim that remains in this case following the Court's prior ruling on dispositive motions, is a Fourth Amendment claim against Officer Raethke. (ECF 56). For the reasons set forth below, Officer Raethke is entitled to summary judgment on the Fourth Amendment Claim based on qualified immunity. There was no clearly established law at the time of the conduct at issue in this case establishing that the force used by Officer Raethke was unconstitutional.

## UNDISPUTED MATERIAL FACTS

The Court has already adopted, as modified, Magistrate Judge Stacie Beckerman's Findings and Recommendations (ECF 54) on Defendants' previously filed motion for summary judgment. (ECF 33). As part of that ruling, the Court set forth the relevant underlying facts that were "either undisputed or viewed in the light most favorable to Barror, 'so long as [his] version of the facts [was] not blatantly contradicted by the video evidence[.]" (ECF 54, p. 2) (citation omitted). For purposes of this Motion, the following facts (or deferential view in favor of Plaintiff's version of the facts) are relevant to the determination of qualified immunity:

- Plaintiff was driving a Chevy Silverado near St. Helens, Oregon, reportedly traveling 100 miles per hour and passing other vehicles in the center lane of the highway (ECF 54, p. 2);
- Oregon State Troopers Travis Killens and Christopher Cowen responded to the call in their patrol vehicle (*Id.*);
- The pursuit was recorded on the Troopers' patrol dash camera (*Id.;* ECF 36, Ex. 4);
- The Troopers "called for cover" to assist with the "high risk traffic stop" (ECF 54, p. 3);
- Officer Raethke was nearby on a related call and heard the "general broadcast" about the speeding vehicle and its driver "possibly aimed a firearm" at another driver" (*Id.*);
- Officer Raethke responded and arrived on the scene approximately two minutes after Barror had stopped (*Id.);*
- Upon arrival, Officer Raethke observed the Troopers "with their guns drawn aimed at the vehicle and [] Barror (*Id.*);
- Approximately thirty seconds after parking, Officer Raethke and the Troopers "filed into…a column" and approached the driver's side of the vehicle with their guns drawn (*Id.*);
- As he approached, Officer Raethke observed Barror "lean[ing] away…towards the passenger's side of the vehicle[,]" and Officer Raethke grew "increasingly concerned" with whether Barror was "reaching for something" (*Id.*);
- Officer Raethke and the Troopers issued commands to Barror to exit the vehicle with his hands up as they approached (*Id.*);
- Barror remained in the vehicle and repeatedly shouted that he could not hold his hands up (*Id.)*;
- Officer Raethke testified that he did not hear Barror's shouts (*Id.*);
- Barror remained "uncooperative" and once his door was open, Officer Raethke and the Troopers noticed that Barror "still had his seatbelt on" (ECF 54, p. 4);
- Trooper Killens described Barror as exhibiting "frantic behavior" (*Id.*);
- Barror resisted, began "tensing his body," and "pull[ed] away" (*Id.*);
- "[W]hile instructing [Barror] to exit the vehicle, Trooper Cowen reported that Barror resisted and began tensing his body, preventing Trooper Cowen from pulling him out of the vehicle…Trooper Cowen could feel Barror resist and pull away, preventing him from taking Barror into custody (*Id.*);
- Once Officer Raethke and the Troopers were able to remove Barror from the vehicle and he was facedown on the ground, Officer Raethke observed Barror with "his hands kind of near [] his midsection or his beltline" (*Id.*);
- At that time, Officer Raethke still hadn't determined where the firearm was, if [Barror] was in possession of a firearm (*Id.*);
- Although Barror was on the ground, Officer Raethke and the Troopers "couldn't get [Barror's] arms behind his back to handcuff him (*Id.*);
- Trooper Killens observed Officer Raethke use a knee strike to Barrow (*Id.*);
- Officer Raethke still couldn't get [Barror's] arms behind [him] so Officer Raethke delivered a second knee strike (*Id*);
- According to Trooper Cowen, Officer Raethke struck Barror three times (*Id.*);
- Officer Raethke and the Troopers were then able to get Barror's arms behind his back and Officer Rathke "stopped delivering knee strikes" (ECF 54, p. 5);
- After his arrest the Troopers determined that Barror did not have a gun (*Id.*);

- Trooper Cowen testified that whether Barror had a firearm on his person "wouldn't have been determined until [Barror] was in handcuffs and properly searched by an officer [and] until that point he potentially could have a firearm (*Id.*);

Throughout the encounter Officer Raethke was operating under the belief that Plaintiff may have a gun. (ECF 54, p. 12). Officer Raethke also believed the reason he needed to deliver knee strikes to Barror's body was because "there was some kind of concern of getting [] Barror detained…because…we still hadn't determined where this firearm was, if he was in possession of a firearm." (*Id.*). Moreover, Plaintiff does not dispute that the dash camera video accurately depicts the incident, and that it is "clear from the evidence that [plaintiff] did not immediately stop when the Trooper were behind him in their patrol car with the lights and sirens on." (ECF 54, p. 9).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The non-moving party must come forward with "specific facts showing there is a genuine issue for trial." Fed R Civ P 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party <u>only if there is a 'genuine' dispute as to those facts</u>." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added) (quoting Fed. R. Civ. P. 56(c)).

Summary Judgment is appropriate if the court "concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under all circumstances." *Scott v. Henrich,* 39 F.3d 912, 915 (9th Cir. 1994) (affirming entry of summary

judgment for defendant officers where the district court concluded that the officer's use of force was "at all times [] reasonable and proper").

"Where, as here, video evidence is available in an excessive use-of-force case, the Court 'should [ ] view [ ] the facts in the light depicted by the videotape.'" *Watts v. Novak et. el.,* 2024 WL 68350 (D. Or. Jan. 5, 2024).

## ARGUMENT

### I. Officer Raethke is Entitled to Qualified Immunity.

Qualified immunity protects law enforcement officers from suits seeking damages provided that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "In determining whether a state official is entitled to qualified immunity in the context of summary judgment, we consider (1) whether the evidence viewed in the light most favorable to the plaintiff is sufficient to show a violation of a constitutional right and (2) whether that right was 'clearly established at the time of the violation.'" *Sandoval v. County of San Diego,* 985 F.3d 657, 671 (9th Cir. 2021) (citation omitted).

Here, the Court has already concluded in the light most favorable to Plaintiff that "a reasonable jury could conclude from the totality of the circumstances that Raethke's use of force was not objectively reasonable under the circumstances." (ECF 54, p. 14). Therefore, the inquiry focuses on the second prong of the qualified immunity analysis.

    A. <u>Officer Raethke is entitled to qualified immunity because Plaintiff cannot meet his burden of showing that Officer Raethke's conduct was plainly incompetent or a knowing violation of the law.</u>

The second prong of the qualified immunity analysis focuses on the existence, or lack thereof, of "existing precedent [that] must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes,* 138 S.Ct. 1148, 1152 (2018). The Supreme Court has repeatedly

advised lower courts, including the Ninth Circuit specifically, that an "established right must be defined with specificity." *Emmons v. City of Escondido,* 139 S.Ct. 500, 503 (2019) ("This Court has repeatedly told courts…not to define clearly established law at a high level of generality."). This means the precedent must put the defendant on notice in a manner that "every 'reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby,* 138 S. Ct. 577, 589-91 (2018).

This "demanding" requirement "protects all but the plainly incompetent or those who knowingly violate the law" and calls for "a high degree of specificity." *Id.* (internal quotations omitted); *See Smith v. Agdeppa,* 81 F.4th 994, 1001 (9th Cir. 2023). Obviously, "each individual's liability [must be based] on his own conduct." *Jones v. Williams,* 297 F.3d 930, 936 (9th Cir. 2002). It is the Plaintiff's burden to establish the second prong of the qualified immunity analysis. *Ashcroft v. al-Kidd,* 536 U.S. 731, 741 (2011) (noting that on the second prong of the analysis it is Plaintiff's burden to present a case that places the dispute beyond debate).

Thus, the analysis begins and ends with the precedent plaintiff provides as "squarely govern[ing]" these circumstances from which he complains that would have placed every reasonable officer on notice that the alleged conduct was substantially certain to violate the constitution. *Kisela,* 138 S.Ct. at 1153. Plaintiff cannot meet this burden.

There is a complete absence of authority that would have put any, let alone all, reasonable police officers on notice that the type of force Officer Raethke used to take Plaintiff into custody under the specific circumstances of this case was "substantially certain to violate the constitution." *Kisela,* 138 S. Ct. at 1153. Magistrate Judge Beckerman observed the dearth of analogous authority in her Findings and Recommendation issued in this case:

The parties discuss several excessive force cases in their briefing, attempting to analogize or distinguish the facts from those present here. (*See* Defs.' Mot. At 12-14; Pl.'s Opp'n at 7-8, ECF No. 41, analyzing *Johnson v. Cnty. Of L.A.,* 340 F.3d 787 (9th Cir. 2003), *Miller v. Clark Cnty.,* 340 F.3d 959 (9th Cir. 2003); *Meredith v. Erath,* 342 F.3d 1057 (9th Cir. 2003), and *Drummond ex rel. Drummond v. City of Anaheim,* 343 F.3d 1052 (9th Cir. 2003)). **<u>The Court has reviewed each case and finds that none of the factual scenarios is sufficiently analogous to those present here.</u>**

(ECF 54, pp. 10-11, n. 6) (emphasis added). This Court adopted, as modified, the Findings and Recommendation. (ECF 56). Thus, Plaintiff already faces an uphill battle on prong two of the qualified immunity analysis to present a case that places the dispute beyond debate.

Moreover, judges in this District in the past four years have granted law enforcement officials qualified immunity in excessive use of force cases. (*See Carmona-Perez v. City of Salem,* 2023 WL 6216167 (D. Or. Sept. 25, 2023); *Gilliland v. Eason et. al.,* 2023 WL 6850237 (D. Or. Oct. 16, 2023); *Williams v. Baskett,* 2021 WL 4494189 (D. Or. Sept. 30, 2021); *Elifritz v. Fender et. al.,* 460 F.Supp.3d. 1088 (D. Or. May 13, 2020)). *Williams v. Baskett* bears the most resemblance to the facts of this case.

In *Williams,* Salem Police Sgt. Baskett was informed that he had probable cause to arrest the male driver of a black Mercedes (plaintiff) with an identified license plate. 2021 WL 4494189 at * 1. He was also informed by a Keizer police officer that it was likely that the Plaintiff would attempt to elude police in his vehicle. *Id.* Sgt. Baskett received a "Be On the Look Out Bulletin ("BOLO") that specifically identified plaintiff as a suspect for the crimes of forgery and stealing a motor vehicle. *Id.* The BOLO also stated that Plaintiff was "commonly in possession of firearms and was seen with a real handgun about a week ago...[.]" *Id.* Sgt. Baskett also learned that plaintiff had at least one felony caution warrant for his arrest, based on previous incidents for crimes of possession of firearms and/or resisting arrest. *Id.* The plaintiff disputed the "validity" of those

assertions but did not dispute that "they were conveyed to Sergeant Baskett or that Sergeant Baskett believed them to be true." *Id.*

Sgt. Baskett saw plaintiff driving the black Mercedes and decided to drive the wrong way around a traffic circle to prevent plaintiff from eluding arrest. *Id.* Sgt. Baskett collided with the front portion of plaintiff's vehicle and began to push the vehicle backward. *Id.* Sgt. Baskett believed that plaintiff was trying to maneuver the gear shift of his vehicle. Another officer arrived and parked behind plaintiff in the traffic circle. *Id.*

Sgt. Baskett promptly exited his patrol car and pointed his firearm at plaintiff while issuing verbal warnings to show his hands and not reach for anything. *Id.* at *2. Plaintiff opened his door and asked what was going on, to which Sgt. Baskett informed him that he was under arrest, plaintiff ultimately demanded to see a warrant and shut his vehicle door. *Id.* Sgt. Baskett quickly approached the vehicle with his gun drawn and after confirming the plaintiff was not reaching for anything, holstered his weapon. *Id.* However, Sgt. Baskett believed he needed to have physical control over plaintiff to avoid harm to himself and the other officer present. *Id.*

Sgt. Baskett used his baton to shatter plaintiff's driver-side window, which caused glass to fly into plaintiff's face and body. *Id.* Sgt. Baskett shot plaintiff in the chest with a taser dart while his hands were still in plain sight. *Id.* While the taser was in use, Sgt Baskett took a second taser from his utility belt and applied it to plaintiff's left thigh. *Id.* Sgt. Baskett believed plaintiff had a firearm and used the taser "in an attempt to render [him] incapable of assessing and using that firearm." *Id.* The tasers incapacitated plaintiff. *Id.*

Sgt. Baskett and the other officer then forcibly removed plaintiff from his vehicle through the shattered window, where he made impact with the pavement in what plaintiff described as being "body-slammed" by the officers. *Id.* Similar to this case, plaintiff alleged violations of the

Fourth Amendment, and brought five excessive force claims based on each of the force that was used: "(1) stop of his vehicle; (2) shattering of the driver's window of his vehicle; (3) first use of taser on his chest; (4) second use of taser on his leg; and (5) his forced removal from his vehicle." *Id.*

Judge Mosman held that under the circumstances of that case Sgt. Baskett did not violate a clearly established right, finding that "all five alleged instances of excessive force…were objectively reasonable given the considerable governmental interests at stake." *Id.* at \*5. Judge Mosman held, in the alternative, that even if Sgt. Baskett violated a constitutional right, "such a right was not clearly established," thus entitling Sgt. Baskett to qualified immunity.

> Taken in the light most favorable to Mr. Williams, the record indicates that Sergeant Baskett used intermediate force to apprehend a nonviolent criminal suspect who he believed could be in possession of a firearm but who had only engaged in passive resistance. To support his assertion that these actions constitute a clearly established constitutional violation, Mr. Williams cites to *Brown v. Diaz,* No. 2:17-cv-01157-KJM-AC, 2020 WL 4755357 (E.D. Cal., Aug. 17, 2020). In *Diaz,* the court found a police officer violated a clearly established constitutional right by pointing a gun and discharging a taser at a suspect of a minor traffic offense while the suspect did not "pos[e] an apparent threat to officer safety. *Id.* at 10-12. **But due to the information Sergeant Baskett had received regarding Mr. Williams – that he was commonly in possession of a handgun, that he was likely to flee arrest, and that he had previously been arrested on related charges – Sergeant Baskett could have reasonably concluded that Mr. Williams did pose a threat to his safety.** As such, *Diaz* does not " 'squarely govern [ ]' the specific facts at issue." *Kisela,* 138 S.Ct. at 1153 (quoting *Mullenix v. Luna,* 577 U.S. 7, 13 (2015)).

*Williams v. Baskett,* 2021 WL 4494189 at \*5 (emphasis added). Judge Mosman's dealing of the circumstances faced by Sgt. Baskett are analogous to the circumstances faced by Officer Raethke. This case also involves an individual who Officer Raethke believed to have a firearm and who he understood to have just committed felony elude of the Oregon State Police Troopers at a high rate of speed. Officer Raethke had information there may be a firearm involved. (*See also* ECF 54, p. 11; ECF 41, p. 8) (Plaintiff acknowledging those facts).

Page 9 – **OFFICER RAETHKE'S MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY**

Like Sgt. Baskett, it is also "undisputed that Raethke and the Troopers forcibly removed Barror from his vehicle and that Raethke delivered knee strikes while Barror was on the ground." (ECF 54, p. 8). Just as Sgt. Baskett's use of the taser, Officer Raethke's use of knee strikes constitutes, at most, an intermediate level of force. *Id.*[1]

As compared to the five separate allegations of use of excessive force by Sgt. Baskett, all of which were deemed to have been objectively reasonable **and** alternatively not to have violated a clearly established right, Officer Raethke's use of (at most) three knee strikes to take Plaintiff into custody was conduct that, at an absolute minimum, remains within the realm of reasonable debate, entitling him to qualified immunity. *See District of Columbia v. Wesby,* 138 S. Ct. at 589-91 (precedent must put the defendant on notice in a manner that "every 'reasonable official would understand that what he is doing' is unlawful."). As Magistrate Judge Beckerman already noted in this case, there is a dearth of authority from which Plaintiff could draw from otherwise, which this Court adopted in its Order. (ECF 54, pp. 10-11, n. 6; ECF 56).

## CONCLUSION

For the reasons stated above, Officer Raethke's Motion for Summary Judgment on qualified immunity should be granted.

DATED this 10th day of January, 2024.

s/ Rebeca A. Plaza

Aaron P. Hisel, OSB #161265
Rebeca A. Plaza, OSB #053504
Attorneys for Defendants City of St. Helens and Adam Raethke

---

[1] There does not appear to be controlling authority as to the type of force knee strikes constitute. For purposes of this motion for summary judgment, Officer Raethke does not dispute the Court's determination that the use of knee strikes constitutes an intermediate level of force. The lack of clearly established authority on law enforcement officials' use of knee strikes, is illustrative of Officer Raethke's entitlement to qualified immunity.

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing OFFICER RAETHKE'S MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY on:

> Justin Steffen
> Steffen Legal Services LLC
> 2100 SE Lake Rd. #5
> Milwaukie, OR 97222
>   Attorney for Plaintiff

by the following indicated method or methods:

☒  by **electronic means through the Court's Case Management/Electronic Case File system** on the date set forth below;

by **emailing** a copy thereof to each attorney at each attorney's last-known email address on the date set forth below;

by **mailing** a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to plaintiff's last-known address listed above and depositing it in the U.S. mail at Salem, Oregon on the date set forth below.

DATED this 10th day of January, 2024.

s/ Rebeca A. Plaza
Aaron P. Hisel, OSB #161265
Rebeca A. Plaza, OSB #053504
Of Attorneys for Defendants
